**STATE of Missouri, Respondent,**

v.

**Kenneth Ray BAKER, Appellant.**

**Kenneth Ray BAKER, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 16008, 16490.**

Missouri Court of Appeals,
Southern District,
Division Two.

June 26, 1990.

Ellen H. Flottman, Columbia, Thomas D. Carver, Springfield, for appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

FLANIGAN, Presiding Judge.

A jury found defendant Baker guilty of sexual abuse in the first degree, § 566.100,[1] and felonious restraint, § 565.120, and he was sentenced, as a prior and a persistent offender, to consecutive imprisonment terms of seven years and ten years respectively. Defendant appeals, and that appeal is Case No. 16008. After the jury trial, defendant filed a motion under Rule 29.15, seeking relief from the conviction. That motion was denied without evidentiary hearing. Defendant appeals from that denial, and that appeal is Case No. 16490. The appeals have been consolidated and will be dealt with separately in this opinion.

## No. 16008

■ Defendant's first point is that the trial court erred in refusing to give Instruction B, offered by defendant, for the reason that Instruction B submitted the offense of false imprisonment, which is a lesser included offense of felonious restraint, and the evidence supported the giving of Instruction B because the jury could have found that the victim, Janice, was not exposed to a substantial risk of serious physical injury, in that she suffered no serious physical injury and there was no evidence that defendant possessed a weapon with which he could have injured her.

A person commits the crime of felonious restraint, a class C felony, "if he knowingly restrains another unlawfully and without consent so as to interfere substantially with his liberty and exposes him to a substantial risk of serious physical injury." § 565.120.1. "Serious physical injury," as used in § 565.120, "means physical injury that creates a substantial risk of death or

that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." § 565.002(6). False imprisonment is a class A misdemeanor unless the person unlawfully restrained is removed from Missouri, in which case it is a class D felony. § 565.130.2. A person commits the crime of false imprisonment "if he knowingly restrains another unlawfully and without consent so as to interfere substantially with his liberty." § 565.130.1. Felonious restraint contains all the elements of false imprisonment and the additional element that the committer of the offense exposes the victim to a substantial risk of serious physical injury.

The offense occurred during the late afternoon of October 21, 1987. The principal witness for the state was the victim, Janice, a real estate agent. Janice encountered defendant on the public square in Springfield. Janice was wearing a name tag identifying her as a realtor. The defendant was 44 years old and was not acquainted with Janice. Defendant told Janice that he knew of a house which might be available for a "listing."

Janice and defendant drove to a house on East Central in Springfield. Defendant's house was close by. Defendant had recently painted the house which was to be inspected, and defendant had the key to it.

Janice and defendant entered the house, which was "totally vacant." After looking at the interior of the house, Janice started to open the front door but defendant said he was not through talking with her and shut the door. Defendant told Janice he wanted to take her to a party. She told him she did not want to go. Defendant said she was going to go with him and that he was going to take her out there and have her sexually assaulted. Defendant told Janice that he had not been "with a woman" in a long time and that she was not leaving until they had sex. Janice told

1. All references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

him she did not want to have sex and to let her walk out the front door.

Janice testified, "He threatened to harm me. I told him the last thing he needed were rape charges, and he got angry and flung me across the room and said, 'Oh, you would, would you ... I might as well kill you and get it over with.' I told him to stop, that I had five little children. I pleaded over and over for him to let me out the front door."

Janice further testified, "I started for the door and he started laughing and said, 'Not until I get some ...' I made it to the door on about three occasions but there was a dead bolt and the door lock. By the time I could get the dead bolt undone he was shutting the door and locking it back. He flung me across the room. I began to panic because I began to realize nobody knew that I had run into him. No one knew we were going there.

"I felt he had a weapon. At one point he had me up against the wall and I had my hands against his chest and he started reaching in his top pocket real slow and just staring me in the face and I said, 'What are you doing, what are you taking out of your pocket,' because he had an object about this long and I thought it was a pocket knife. He pulled it out real slow. It was the halves of two cigarettes but it frightened me so bad I started to slide down the wall. I was sure he had a knife on me.

"Then he lit one of the cigarettes and had it in his fingers and put both hands like this behind my neck. He had his thumbs like that but I didn't know at any moment when he might choke me. He grabbed me by the breasts on at least three occasions and poked me on the breast numerous times."

Janice further testified that during this ordeal, which lasted an hour to an hour and a half, defendant would not let her leave. Janice saw the door knob turn and defendant's mother, who lived nearby, entered the room. When defendant turned to look at his mother, Janice fled from the house.

On cross-examination by defense counsel, Janice testified that defendant "might be a little taller than I." She said that when defendant threw her against the wall he had both hands and fingers "like so, put both of them behind the back of my neck, and he had a cigarette lit. I thought he was going to set my hair on fire. He was definitely trying to scare the daylights out of me."

After fleeing from the house, Janice went to the home of a friend who called the police. Officer Blunt and Officer Greene went to defendant's house and arrested him.

Detective Timothy Medlin of the Springfield Police Department interviewed defendant on October 22 and gave defendant the Miranda warnings. Medlin testified at length concerning statements defendant made to him. Defendant admitted to Medlin that he had been present in the house with Janice and that he had made sexual advances to which she was not responsive.

Defendant contends, and the state agrees, that false imprisonment is a lesser included offense of felonious restraint. This is so because false imprisonment is established by proof of the same or less than all of the facts required to establish the commission of felonious restraint, the offense charged. See § 556.046(1).

Section 556.046.2 reads: "The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense."

In *State v. Olson*, 636 S.W.2d 318, 321 (Mo. banc 1982), the court said:

"[Section 556.046.2] has for its purpose the exclusion of the requirement to instruct down in certain instances. It seems the intent was to not require an instructing down unless there were *facts* in evidence from which the jury could find the appellant NOT guilty of the higher offense AND guilty of the lesser." (Emphasis in original.)

At 322 the court said: "Section 556.046.2 limits the requirement of instructing down to those instances where there is some *affirmative evidence* of a lack of an essen-

tial element of the higher offense which would not only authorize acquittal of the higher but sustain a conviction of the lesser." (Emphasis added.)

Defendant does not challenge the sufficiency of the evidence to support the conviction for felonious restraint. This is a tacit admission that the evidence showed that the defendant exposed Janice to a substantial risk of serious physical injury and that the other elements of felonious restraint are present. Janice testified to the threatening manner in which defendant removed a cigarette from his pocket. He threw her against the wall and had both of his hands behind her neck. The cigarette was lit and Janice thought he was going to set her hair on fire.

In his point and in his argument defendant asserts that there was no evidence that Janice suffered actual physical injury and no evidence that defendant possessed a weapon. "Whether or not the victim suffered serious physical harm is irrelevant." *State v. Brigman*, 784 S.W.2d 217, 221 (Mo.App.1989). The use of a dangerous instrument is not required to prove felonious restraint. *State v. Terrell*, 751 S.W.2d 394, 396 (Mo.App.1988).

Janice's testimony was essentially the only testimony concerning the specific conduct of defendant inside the vacant house. Although Officer Medlin testified concerning statements made to him by defendant, defendant disclaimed any memory of his specific conduct. Medlin said, "[Defendant] told me that these things could have occurred with [Janice] as she reported, but he just didn't remember."

There was no affirmative evidence, as required by *Olson*, that the element of exposing the victim to a substantial risk of serious physical injury was lacking. The trial court did not err in refusing to give Instruction B offered by the defendant. Defendant's first point has no merit.

■ Defendant's second point is that the trial court erred in permitting the state to present evidence of defendant's post-arrest silence, because such evidence violated defendant's constitutional rights by directing the jury's attention to the fact that defen-

dant refused to speak on his own behalf "in that state's witness Blunt testified that following the Miranda warnings defendant made no comments or statements."

Defendant concedes that this point was not raised in his motion for new trial and thus was not preserved for appellate review. See Rule 29.11(d). Defendant requests plain error review under Rule 30.20.

Defendant's second point is based upon the testimony of Officer Blunt who arrested defendant on October 21. Blunt testified that he gave defendant the Miranda warnings and that defendant made no statement at that time. Officer Medlin, also a state's witness, testified that he interviewed defendant on October 22 and gave him the Miranda warnings. Medlin testified concerning statements defendant made to him.

In *State v. Frentzel*, 717 S.W.2d 862, 866[4] (Mo.App.1986), this court said:

"[T]he silence of an accused while he is under arrest is not admissible against him because he is under no duty to speak. It is also settled that an accused's failure to volunteer an exculpatory statement or deny or explain an incriminating fact—while he is under arrest—is inadmissible.... *This rule does not apply if the accused chooses to waive his Fifth Amendment privilege by making statements while he is in custody* .... It has been held that if an accused answers questions or makes statements after he has been taken in custody and has been advised of his *Miranda* rights, he has elected not to remain silent and has waived his right to do so." (Citing authorities; emphasis added.)

In *State v. Stuckey*, 680 S.W.2d 931, 938[12–13] (Mo. banc 1984), the court said:

"It is improper to elicit testimony that *Miranda* warnings have been given and heeded, but there is no error simply in showing that the warnings were given. *State v. Lamb*, 468 S.W.2d 209 (Mo. 1971). The defendant did not remain silent, either while in custody or at the trial. He spoke with the sheriff after

receiving *Miranda* warnings, and, according to the sheriff, volunteered a statement that he killed the victim but did not intend to. The state was entitled to show that the defendant's statements were made voluntarily and that he had been clearly advised that he was not obliged to make any statement."

Any complaint concerning Officer Blunt's testimony that defendant remained silent after receiving the Miranda warnings was invalidated by the subsequent showing by the state that the defendant, after receiving again the Miranda warnings from Officer Medlin, gave a statement to Medlin concerning the events in the vacant house. *State v. Stuckey,* supra; *State v. Frentzel,* supra; *State v. Van Doren,* 657 S.W.2d 708, 716[14] (Mo.App.1983); *State v. Harper,* 637 S.W.2d 342, 345[4] (Mo.App.1982); *State v. Gilreath,* 643 S.W.2d 274, 277 (Mo.App.1982); *State v. Trice,* 575 S.W.2d 739, 741[8, 9] (Mo.App.1978). Defendant's second point has no merit.

The judgment is affirmed.

### No. 16490

Movant asserts that the trial court clearly erred in denying, without an evidentiary hearing, his Rule 29.15 motion for post-conviction relief because movant was denied his constitutional right to effective assistance of counsel "in that trial counsel advised him not to testify and failed to inform him of the negative implications which would be drawn by the jury by his failure to testify."

"Review of the trial court's ruling on a 29.15 claim is limited to a determination of whether the findings and conclusions are clearly erroneous. Rule 29.15(j). Such findings and conclusions will be found to be clearly erroneous only if, after a review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made."
*Amrine v. State,* 785 S.W.2d 531, 533 (Mo. banc 1990).

"Movant is entitled to an evidentiary hearing if: (1) he alleges facts, rather than conclusions, which, if true, would warrant relief; (2) the facts alleged raise matters which are not refuted by the files and record in the case; and (3) the matters complained of resulted in prejudice to movant's defense."
*Henderson v. State,* 786 S.W.2d 194, 196[2] (Mo.App.1990).

Movant initially filed a pro se motion under Rule 29.15 in which he set forth certain grounds for relief, one of which was that his trial counsel "was ineffective due to her failure to place defendant on the stand to testify in his own behalf and refute the testimony of the complainant." In that portion of the form requiring a statement of the facts in support of the grounds, movant stated no facts. He merely stated: "[Movant] will support the grounds set forth in the foregoing with the trial transcript and his personal testimony under oath as to the true facts and circumstances involved in the charges he faced as an accused defendant."

In his amended motion, prepared by motion counsel, movant stated:

"[I]neffective assistance of counsel was rendered to him at the time of his trial in that even though his counsel asked Movant on the witness stand if he wished to testify, counsel did not adequately explain to Movant the negative inference which would be drawn by the jury in the event he failed to testify."

At the close of the state's evidence at the jury trial, and outside the hearing of the jury, movant testified, under direct examination by his trial counsel, that he understood he had a right to testify if he so chose. Movant said: "I understand that's a constitutional right and no matter what anyone says to me it's my decision and my decision alone whether or not I wish to testify. I understand the judge will give an instruction to the jury that the jury can't hold it against me if I don't testify.... I understand that if I testify my prior convictions can be used for impeachment ... I understand the state can ask me about my prior convictions but that those prior convictions can be used for the jury to think he's (sic) telling the truth or not telling the truth but not whether or not I'm

guilty ... The only reason I won't take the stand is my past ..."

Under questioning by the court movant stated: "I've got a couple of felonies.... I understand all my rights as [my trial counsel] has explained them ... In no uncertain terms I am telling the court that I do not wish to testify, it's my choice ... I am sober this morning, I have had nothing to drink and I understand what's going on in court."

It will be noted that movant's point states that trial counsel advised him not to testify. No such statement was contained in his Rule 29.15 motion, and that portion of the point is not preserved.

Movant's point also asserts that counsel was ineffective in failing to inform movant "of the negative implications which would be drawn by the jury by his failure to testify."

The court instructed the jury not to draw such implications. Instruction 9, given to the jury, read: "Under the law, a defendant has the right not to testify. No presumption of guilt may be raised and no inference of any kind may be drawn from the fact that the defendant did not testify." Movant is arguing, in effect, that counsel should have advised him that the jury would not follow Instruction 9. Such advice would have been improper, and counsel cannot be faulted for not giving it.

In denying the motion, the trial court stated: "Movant was advised fully of the consequences of not testifying at trial by his trial attorney and by this court. Further, the record reflects that the explanation of the consequences of movant not testifying on his own behalf and his ability to testify during trial was completely explained in open court on the record and out of the presence of the jury." The court pointed out, in its conclusions, that the record refuted movant's complaint of ineffective assistance of counsel with respect to movant's decision not to testify.

The findings and conclusions of the motion court are not clearly erroneous and are in fact fully supported by the record. Movant's point has no merit.

The judgment is affirmed.

HOGAN, C.J., and MAUS, J., concur.