STATE of Missouri, Plaintiff–
Respondent,

v.

Lester TIMS, Defendant–Appellant.

Lester TIMS, Movant,

v.

STATE of Missouri, Respondent.

Nos. 60806, 63639.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 30, 1993.

Henry B. Robertson, St. Louis, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jennifer A. Glancy, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Judge.

Defendant, Lester Tims, was convicted in a jury trial of forcible rape, § 566.030 RSMo

1986, forcible sodomy, § 566.060 RSMo 1986, and kidnapping, § 565.110 RSMo 1986.

Defendant was originally sentenced as a Persistent Sexual and Class X Offender to two life terms and thirty years of incarceration all to be served consecutively without probation or parole. The sentence and judgment were subsequently corrected by an order nunc pro tunc striking defendant's sentencing status as a Class X Offender. The order also dismissed the remainder of defendant's Rule 29.15 motion.

On direct appeal, defendant claims the trial court erroneously denied his motion to quash the jury panel based on a Batson objection. He also alleges the trial court should not have admitted testimony regarding his request for an attorney and the termination of the police investigation because it effectively violated his Fifth Amendment right to silence.

Defendant filed notice of appeal regarding his 29.15 motion. In his brief, however, defendant did not raise any argument on this issue and the motion court's ruling is therefore affirmed.

### Facts

The facts are herein set out only as they are relevant to the issues on review. Defendant approached, threatened and kidnapped an eleven-year-old girl from a playground where she had been playing with two of her cousins. He took her to an abandoned building and, over the course of two days, sodomized and raped her repeatedly. After the victim escaped those confines, she and her cousin provided the authorities with sufficient information to identify defendant and lead to his apprehension.

When the police arrested defendant, they first approached him and asked to verify his identity. Defendant responded by standing up, turning his back, and presenting his wrists for handcuffs. Two detectives took defendant into custody and transported him to the police station. En route, the detectives informed defendant of his Miranda rights, and the defendant simultaneously recited these rights back to the detectives. He thereafter indicated a willingness to waive his right to remain silent. After arriving at police headquarters, a detective again informed defendant of his rights. Defendant indicated he understood those rights and would sign a waiver and give a videotaped confession.

After completing the video, the officers recognized discrepancies between defendant's version of the events and the victim's report. They proceeded to question defendant off tape regarding these discrepancies. Defendant eventually declined to answer further questions and requested an attorney; at which point all questioning ceased.

At trial, during voir dire, defense counsel timely moved to quash the jury panel after the prosecutor exercised her peremptory strikes. Defense counsel claimed a Batson violation, in that the prosecutor's strikes were not exercised in a race-neutral fashion. The prosecutor then volunteered justifications for her strikes and the judge accepted her explanations and overruled the objection.

Further, during the direct examination of one of the arresting detectives, the prosecutor asked about the conclusion of defendant's confession. The police officer testified that, when questioned about discrepancies in his videotaped confession, the defendant refused to answer any further questions and he requested an attorney. Defense counsel objected to this testimony because it violated defendant's *Fifth Amendment right to remain silent*. The trial judge overruled this objection. Subsequently, defendant was convicted on all counts. We consider each issue raised on appeal in turn.

### I.

In his first point defendant argues that the trial court erred by overruling his motion to quash the jury panel after the state's peremptory strikes. He asserts that the strikes made by the prosecutor were not race neutral and that the explanations offered to jus-

tify the strikes were pretextual. We decline to review for reversible error because this issue has not been properly preserved for review.

■ *State v. Parker*, 836 S.W.2d 930 (Mo. banc 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992), and its progeny have established a 3–step procedure for handling a Batson challenge in Missouri courts. First, a complainant must raise a timely and appropriate objection at trial regarding one or more venirepersons struck by the opposing side and these venirepersons must be a part of a cognizable minority. *Cf. Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (the defendant need not be a member of that same minority).

After a proper objection has been raised, the *Parker* procedure requires that the opposing side offer reasonably specific and race-neutral explanations for its strikes. These explanations are deemed race-neutral unless discriminatory intent is evident in the explanation. Assuming the explanations are adequate, the burden again shifts back to the objecting party to show that the strikes were pretextual and racially motivated. *Parker*, 836 S.W.2d at 934. The trial court then rules on the Batson issue based on an evaluation of all of the facts and circumstances surrounding the challenged strikes.

■ Under *Powers*, a defendant is responsible not only for protecting his own rights, but he is also charged with the authority to be "a motivated, effective advocate for the excluded venirepersons' rights." *Powers*, 499 U.S. at 414, 111 S.Ct. at 1372. Striking a venireperson based on racially-discriminatory motives offends the equal protection rights of both the defendant and the struck venireperson. *Id.; Parker*, 836 S.W.2d at 936.

Further, the Missouri Supreme Court has determined that "the proper remedy for discriminatory use of peremptory strikes is to quash the strikes and permit those members of the venire stricken for discriminatory reasons to sit on the jury if they otherwise would." *State v. Grim*, 854 S.W.2d 403, 419 (Mo. banc 1993). This procedure prevents the wrongful dismissal of the injured venirepersons and preserves both their civil privilege and responsibility to serve as a juror. For this purpose, a defendant is charged with the license to represent the interests and rights of the venirepersons. *Powers*, 499 U.S. at 413–414, 111 S.Ct. at 1372.

In accord with *Grim*, it has been established that "quashing the panel and commencing the jury selection process anew does not really correct the error" of a prejudicial strike. *State v. Sutherland*, 859 S.W.2d 801, 803 (Mo.App.E.D.1993). The purpose of a Batson challenge is not to replace an entire panel, which would effectively deny the wrongly struck jurors their opportunity to serve, but to quash only the prejudice or wrongful strike.

■ In this case, the defense counsel failed to use the appropriate form of objection for a Batson challenge when she moved to quash the jury panel. Furthermore, even if the motion were acceptable, defendant failed to sustain his burden of proving the prosecutor's explanations were pretextual. Therefore, he did not preserve this issue for review. Following *Sutherland*, we also decline to address this point for plain error. *Id.*

## II.

Defendant further argues the trial court erroneously admitted testimony which violated his Fifth Amendment right to silence. At trial, the prosecutor questioned an arresting officer about the details of defendant's videotaped confession. The police officers conducting the interrogation had noted various discrepancies between defendant's story and the witness' account of events. The officers then attempted to clarify the facts, at which point defendant refused to answer any further questions and requested an attorney. Specifically, defendant objects to the following interrogation by the prosecutor and resulting testimony:

PROSECUTOR: Now Detective Sasenger, after the videotape, did you and Detective

Keeler talk to the defendant, Lester Tims, and note discrepancies between what he had said on the videotape and what he had earlier told you in the office?

WITNESS: Yes, we talked that over at the video, T.V. Section.

PROSECUTOR: Before you even left the T.V. Section?

WITNESS: Right, before we left.

PROSECUTOR: And that was, at that point, that was the extent of any further statements he made?

WITNESS: Right, he requested a lawyer.

DEFENSE: Your Honor, I'm going to object. . . .

COURT: It's noted, I'll overrule.

■ A defendant's post-arrest silence or language representing silence cannot be used as evidence to incriminate him. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). It cannot be remarked on, testified to nor implied in the prosecution's presentation of its case. *State v. Dowling,* 348 Mo. 589, 154 S.W.2d 749, 755 (Mo.1941); *State v. Martin,* 797 S.W.2d 758, 764 (Mo. App.E.D.1990). More specifically, a defendant's silence "in the face of a charge of guilt made under circumstances calling imperatively for an admission or denial" or where a jury could conclude that only a guilty person would have remained silent cannot be admitted. *State v. Starks,* 459 S.W.2d 249, 252 (Mo.1970); *State v. Green,* 798 S.W.2d 498, 503 (Mo.App.S.D.1990).

■ However, once this right to remain silent has been waived, all speech, or non-silence, by a defendant may be admitted into evidence and remarked on. In fact, even testimony describing certain "silence" is "fair subject for comment at trial" until this waiver is revoked. *State v. Pulis,* 822 S.W.2d 541, 546 (Mo.App.S.D.1992); *State v. Frentzel,* 717 S.W.2d 862, 866 (Mo.App.S.D.1986).

■ The waiver of this right may be revoked at any time, at which point a defen-

dant's silence is again protected. A revocation of a defendant's waiver to his right to silence must be clearly made in order to be effective. It cannot be accomplished sporadically or incompletely. *State v. Smart,* 756 S.W.2d 578, 581 (Mo.App.W.D.1988). "Although the waiver is not irrevocable, it is certainly effective until withdrawn. If the privilege is reasserted, it is not available to avoid a single offensive question, but to cease all questioning, and the suspect is under an obligation to communicate his decision in an intelligible fashion." *Id.*

There have been many cases where courts have reviewed testimony concerning a defendant's "silence." These have involved claims where the defendant waived his right to silence and, with varying success, tried to revoke that waiver. The cases concern a defendant who: 1) initially refused to make a statement and only later volunteered information, *State v. Mathenia,* 702 S.W.2d 840 (Mo. banc 1986); 2) claimed a right to silence yet continued speaking, *State v. Baker,* 791 S.W.2d 939 (Mo.App.S.D.1990); 3) incorporated an incriminating statement with "silence," *State v. Stewart,* 542 S.W.2d 533 (Mo. App.1976); and 4) refused to answer only certain questions or inquiries during a general interrogation, *State v. Pulis,* 822 S.W.2d 541 (Mo.App.S.D.1992); *State v. Frentzel,* 717 S.W.2d 862 (Mo.App.S.D.1986).

In all of the above cases, the court allowed mention of either a defendant's failure to answer a question or some other manifestation of silence. Any attempts by the respective defendants to reinvoke their Fifth Amendment right had not been effective to exclude this testimony. However, these cases are not controlling here.

It is not disputed that the defendant in this case both intelligibly and effectively revoked his waiver of the right to remain silent. On review, we consider two issues concerning what resulting "silence" may be commented on at trial. The first is the admissibility of the fact that defendant terminated the interrogation; and the second issue is the admissibility of the fact that the defendant re-

quested an attorney. We hold that the first was fair comment for trial, while the second was protected "silence" and should not have been admitted. However, we decline to reverse defendant's conviction because, based on the overwhelming evidence of guilt, the error was harmless beyond a reasonable doubt.

### Refusal to Answer Further Questions

■ While we caution that any testimony must be carefully analyzed regarding the implications resulting from a defendant's silence, merely testifying to the conclusion of an interrogation after a defendant waived his right to silence is not prejudicial error.

Any evidence describing these events must be carefully scrutinized. If the analysis of problematic testimony reveals that the defendant was failing to answer a direct charge of guilt, it should not be admitted. *State v. Stuart*, 456 S.W.2d 19 (Mo. banc 1970). Or, if this was "a case where the defendant clammed up ... under circumstances calling imperatively for an admission or denial," the evidence should likewise be refused. *Starks*, 459 S.W.2d at 252. But to the extent that "no inference of guilt of the crime ... could reasonably have been drawn from the officer's answer ..." the testimony is appropriate. *Id.; State v. Howell*, 838 S.W.2d 158, 161 (Mo.App.S.D.1992).

■ In this case, the actual testimony was harmless, although the potential for inadmissibility was high. As set out above, the police officer merely affirmed, "that was the extent of any further statements [defendant] made." The testimony does not reflect any refusal to answer a direct question or charge. *Green*, 798 S.W.2d at 502–03. It does not indicate an instance where only a guilty man would remain silent. The testimony does not give rise to any impermissible inference of guilt.

### Request for an Attorney

■ The second issue arising from the officer's comment, however, cannot be so easily dismissed. A request for an attorney may be perceived to be a remark which would be made by a guilty party. It is an effective reclamation of defendant's right to silence and thus is not proper comment in testimony. *Martin*, 797 S.W.2d at 764. In this case specifically, the trial court should have restricted both the prosecutor's question and the witness' response to exclude this request. *See, e.g., State v. Outley*, 693 S.W.2d 184 (Mo.App.W.D.1985).

■ However, as we heretofore stated, we decline to find that this error warrants a reversal of defendant's conviction. Instead, we find that the error is harmless beyond a reasonable doubt in light of the overwhelming evidence supporting the conviction. *Martin*, 797 S.W.2d at 765; *State v. Grubb*, 705 S.W.2d 83, 84 (Mo.App.E.D.1985).

Defendant was independently identified by both the victim and her cousin. He anticipated that the arresting officers had approached him with the intention of apprehending him and readily gave himself up to them. Subsequently, defendant freely spoke to the police and confessed his guilt both on and off videotape. The forensic and fingerprinting evidence corroborate both the victim's recitation of events as well as defendant's confession.

Even after such extensive admissions and evidence, defendant had every right to request an attorney and not to have this request brought up at trial. However, we cannot conclude that the erroneous admission of the single statement could have had any prejudicial effect upon the outcome of this action. *Martin* 797 S.W.2d at 765. As the court in *Martin* recognized, "if [defendant] were tried one hundred times on this evidence, with or without [the detective's] testimony, [he] would be convicted one hundred times." *Id.* (quoting *Smart*, 756 S.W.2d at 582). Likewise, this defendant's conviction is affirmed.

We affirm defendant's convictions and the motion court's ruling on his 29.15 motion.

SIMON, P.J., and GARY M. GAERTNER, C.J., concur.