**STATE of Missouri, Respondent,**

v.

**Kevin SMITH, Appellant.**

**Kevin SMITH, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 65798, 67204.**

Missouri Court of Appeals,
Eastern District,
Division One.

May 23, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 24, 1995.

Robert E. Steele, Jr., Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michelle A. Freund, Asst. Atty. Gen., Jefferson City, for respondent.

CRAHAN, Judge.

Defendant, Kevin Smith, was convicted following a jury trial of sodomy, § 566.060 RSMo.Supp.1993, for which he was sentenced as a prior offender to 75 years imprisonment, and felonious restraint, § 565.120.1 RSMo. 1994, for which he was sentenced to seven years imprisonment. After the trial, Defendant filed a Rule 29.15 motion for postconvic-

tion relief which was denied without an evidentiary hearing. Defendant appeals only the conviction for felonious restraint and the denial of his 29.15 motion. We reverse the conviction of felonious restraint and affirm the denial of his 29.15 motion.

The facts viewed in the light most favorable to the verdict are as follows. On July 3, 1993, at approximately 1:50 p.m., Victim, a 13 year-old girl, walked from her parents' house to her sister's house at the corner of Kennerly and Hamilton to attend a family reunion. When no one answered the door upon her arrival at 2:10 p.m., Victim sat on the front porch to wait for her sister to return home. Five minutes later, Defendant entered the yard through a gate, sat next to Victim on the porch and asked Victim her name and age. Victim gave Defendant a false name and told him she was 11 years old.

After ignoring Defendant for five minutes, Victim decided to return to her parents' home. Defendant asked Victim where she was going, and Victim told him she was going home. Defendant asked Victim if she would accompany him to the store, but Victim refused. Defendant grabbed Victim's wrist and pulled her through the gate to Hamilton, the adjoining street. Defendant released Victim and followed her as she walked up Hamilton. Victim told Defendant she was going to a nearby phone to call her father to pick her up. Defendant told Victim she could use the phone at his house, but Victim refused.

Victim then attempted to return to her sister's house, but Defendant again grabbed her by the wrist, directed her to a house across the street from her sister's house, and sat her on a log. Victim became frightened, started crying and got up to return to her house. Victim crossed Hamilton, and Defendant followed her. A car pulled up, and Defendant briefly spoke to its occupants. Defendant then grabbed Victim and pulled her through a nearby gate and into an abandoned garage. As Defendant pulled Victim, she began to cry and repeatedly yelled, "No."

At approximately 2:30 p.m., Jo Williams and her friend, Nicole Thompson, were driving south on Hamilton. Williams saw a man holding a little girl's hand on the corner of Kennerly and Hamilton. The girl was crying. As she drove by, Williams noticed that the man "had her real tight by the arm." In her rearview mirror, Williams saw the man pull the girl through a gate into an area that was vacant. Williams and Thompson heard the girl yelling, "No." Williams backed her car up to the gate, and both she and Thompson saw Defendant push Victim into the abandoned garage and heard Victim crying. Thompson ran to a nearby home and called the police. When the police did not immediately respond, she called her husband and told him what they had seen. Thompson's husband called her cousin, Timothy McGee, who immediately met Thompson.

Once inside the garage, Defendant asked Victim her name again, and Victim told him her real name. Defendant then pulled out a glass pipe with a black substance on the end of it and began smoking the pipe. He forced the pipe into Victim's mouth, causing Victim to gag. Defendant pulled down his pants and told Victim to take off her clothes. Initially, Victim refused. Defendant again demanded that she take off her clothes, and Victim took off her shorts. Defendant pulled down his underwear and told Victim to suck his penis. Victim responded that she did not know how. Defendant then forced his penis into her mouth and left it there for approximately one to two minutes. Defendant then took Victim's shirt off and told her to lie down on the ground. Victim refused. Defendant again demanded that Victim lie down, and she did so.

At this point, McGee approached the garage with a stick in his hand. Defendant came to the door wearing only a shirt and stated, "Ain't nobody doing nothing to nobody. I ain't raping nobody." Defendant then told Victim to get dressed. Immediately thereafter, a St. Louis police officer arrived at the garage and observed Defendant standing next to Victim while pulling up his pants. Defendant was arrested and taken into custody.

## I. Direct Appeal

In his first point, Defendant contends the trial court erred in overruling his motion for

a judgment of acquittal on the felonious restraint count. Defendant contends the evidence was insufficient to establish his guilt beyond a reasonable doubt because the state offered no evidence that Defendant exposed Victim to a substantial risk of serious physical injury. We agree.

In assessing the sufficiency of the evidence, we consider all the evidence and the reasonable inferences drawn therefrom in the light most favorable to the verdict and disregard all evidence to the contrary. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989); *State v. Zimmerman,* 886 S.W.2d 684, 691 (Mo.App.1994). Appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Id.*

■ Felonious restraint is defined in § 565.120.1 RSMo.1994 as follows:

A person commits the crime of felonious restraint if he knowingly restrains another unlawfully and without consent so as to interfere substantially with his liberty and exposes him to a substantial risk of serious physical injury.

Whether the victim suffered serious physical injury is irrelevant. Also, the use of a dangerous weapon is not required to prove felonious restraint. The offense simply requires that a defendant unlawfully restrain the victim and expose the victim to a substantial risk of serious physical injury. *State v. Baker,* 791 S.W.2d 939, 942 (Mo.App.1990); *State v. Brigman,* 784 S.W.2d 217, 221 (Mo.App. 1989); *State v. Warren,* 779 S.W.2d 751, 753 (Mo.App.1989).

■ Section 565.002(6) RSMo.1994 defines "serious physical injury" as a "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." A protracted loss or impairment of the function of any part of the body entails an injury short of permanent but more than a short duration. *State v. Brokus,* 858 S.W.2d 298, 301 (Mo.App.1993). Further, an impairment of the function of any part of the body means damage, injury

or deterioration and is distinguishable from "loss" of function. *Id.*

■ There is no dispute that Defendant restrained Victim so as to interfere with her liberty. Defendant contends, however, that the state failed to present sufficient evidence that this restraint exposed Victim to a substantial risk of serious physical injury.

Whether unlawful restraint exposes a victim to the risk of serious physical injury is to be determined from all of the circumstances. *Warren,* 779 S.W.2d at 753. In past cases, Missouri courts have focused on the defendant's behavior for evidence of physical intimidation or violence which, if repeated or carried further, could have seriously injured the victim or threats of or the propensity to commit violence which, if carried out, could have seriously injured the victim. For instance, in *State v. Brokus,* 858 S.W.2d 298 (Mo.App.1993), the defendant grabbed the victim's arm through the open passenger window of a car and attempted to pull the victim into the car through the window. *Id.* at 300–01. This court found that car windows are not designed for entering or leaving a vehicle and that such an action could lead to the protracted impairment of one's limbs. Thus, the evidence supported the inference that defendant exposed victim to a substantial risk of serious physical injury. *Id.* at 301.

Missouri courts have reached the same conclusion based upon evidence that: (1) defendant refused to allow three people to leave his home as he waved firearms and threatened to injure them by using the weapons, *State v. Gottsman,* 796 S.W.2d 27, 27–28 (Mo.App.1990); (2) defendant restrained a woman in an empty building, threatened to harm her, threw her against a wall, pretended to be reaching for a weapon and put his hands around her neck, *State v. Baker,* 791 S.W.2d 939, 940–42 (Mo.App.1990); (3) defendant and his accomplices threw a woman into defendant's automobile, threatened to kill her, forcibly held her down, told her they had a weapon and told her to be quiet or they would kill her, *State v. Brigman,* 784 S.W.2d 217, 221 (Mo.App.1989); (4) defendant, who was much larger and stronger than victim, twisted victim's arms behind his back, forced

him to enter defendant's home, took medication for depression and forced victim to disrobe before sodomizing him, *State v. Warren*, 779 S.W.2d 751, 752–53 (Mo.App.1989); and (5) defendant physically injured one woman and assaulted another woman, restrained the women and pulled them toward a street where he claimed he had a car, *State v. Terrell*, 751 S.W.2d 394, 395–96 (Mo.App. 1988).

In the present case, there is evidence that Defendant grabbed Victim's wrist in leading her out of her sister's yard, directing her to the house across from her sister's house and leading her into the garage. Further, he forced his pipe into Victim's mouth, and Victim choked from the pipe. However, neither of these actions created a substantial risk of death, nor were they capable of causing serious disfigurement or protracted impairment of any part of Victim's body. Furthermore, the evidence reveals that Defendant never threatened Victim with physical injury. While in her sister's yard and then out on the adjacent street, Defendant directed Victim by grabbing her but never threatened to hurt her. Once in the garage, he continued to issue commands to Victim, but, according to her testimony, he did not threaten to physically harm her.

The state contends that Defendant exposed Victim to a substantial risk of serious physical injury by sodomizing her, which could have exposed her to the AIDS virus, and almost raping her, which could have caused damage to her vagina and uterus or exposed her to the AIDS virus. It is appropriate in a felonious restraint case "to place emphasis upon the propensity and the ability of the defendant to inflict" particular injuries. *State v. Warren*, 779 S.W.2d 751, 753 (Mo. App.1989). However, there must be evidence substantiating the alleged propensities of the defendant. Here, the state offered no evidence that Defendant had contracted any social disease, including the AIDS virus; thus, there is no support for the contention that he could have passed a virus on to Victim. Further, there is no evidence Defendant attempted to rape Victim and thereby expose her to the risk of suffering protracted impairment of her vagina or uterus.

Defendant's actions in restraining and sodomizing Victim were heinous and reprehensible. Undoubtedly, Victim was exposed to or sustained serious psychological injury from this ordeal. This is undoubtedly true in every case of sodomy and fully justifies the extended prison term authorized by the legislature and properly imposed for that crime in this case. There is no evidence, however, supporting the submission of the charge of felonious restraint as defined in the statute and instruction. The state failed to make a submissible case on this charge. Where the evidence is not sufficient to sustain a conviction, the only remedy available is acquittal. *State v. Roby*, 756 S.W.2d 629, 632 (Mo.App. 1988). The judgment of the trial court on the count of felonious restraint is reversed, and the Defendant is ordered discharged as to this count.

## II. Denial of Rule 29.15 Motion

Defendant challenges the denial without an evidentiary hearing of his Rule 29.15 motion. Defendant contends the motion court erred in refusing to set aside the trial court's sentence on his conviction for sodomy because it exceeded the maximum sentence authorized for a prior offender convicted of sodomy. Defendant also argues the motion court erred in denying his claim of ineffective assistance of counsel for failing to call a witness to testify on his behalf. Finally, Defendant claims the motion court erred in denying his claim that his counsel failed to submit or request and the trial court failed to issue, sua sponte, a verdict director instructing the jury on the lesser-included offense of sexual misconduct.

We have reviewed the briefs of the parties and the record on appeal and find that the judgment of the motion court is not clearly erroneous. An opinion restating the principles of law on these issues would have no precedential value. The judgment is affirmed in accordance with Rule 84.16(b).

GRIMM, C.J., concurs.

REINHARD, P.J., dissents in separate opinion.

REINHARD, Judge, dissenting.

I join the affirmance of the denial of defendant's Rule 29.15 motion and respectfully dissent from that portion of the opinion which reverses the felonious restraint conviction. I will not restate the evidence, however, I find the following facts significant.

Defendant was thirty-three years old at the time of the crime. He testified on direct examination that he had been previously convicted of first-degree robbery and sentenced to twelve years' imprisonment.[1] Victim, on the other hand, was a thirteen-year-old girl that witnesses described as the "little girl". When defendant approached victim on her sister's front porch, victim lied to him about her name and told him she was eleven years old instead of thirteen.

Victim testified that when she informed defendant she was going to go home, he grabbed her arm and "forced [her] ... out of the gate". Defendant then trailed victim down the street, and, after refusing defendant's invitation to go to his house and call her father, defendant "grabbed [her] arm again" and forced her toward the lot across from her sister's house. Victim testified she was: "Crying. I started to cry because I started getting scared."

As defendant "pulled" her through the lot's gate and "pushed" her into the vacant building, victim testified she was "yelling and screaming and stuff". Once inside, defendant "forced" a glass pipe "with some black stuff on the end of it" into victim's mouth and she "got choked off of it". Defendant pulled off his pants and then told victim to remove her clothes. When she didn't comply he told her again "in a mean way". Again, she said she was afraid and accordingly complied with his order. Defendant told victim, "I want you to suck my thing". When victim stated she did not know how, defendant accused her of lying and "forced it in [her] mouth". When Jo Williams saw defendant and victim on the corner of Kennerly and Hamilton she thought initially that "[victim] had got in trouble and her father or her brother or somebody had came and got her...." She testified, "I told Nicole [Thompson, her car-

mate] ... 'She looks really young and she is crying'.... [A]s they went past us it looked like he was saying something to her and she was still crying but he had her real tight by the arm.... I looked in the rearview mirror when they got behind me and he was going up into a area that's vacant, that I know is vacant because I know the area. And by that time he was pulling her and she was pulling back and she said, 'No'".

Nicole Thompson testified that Jo Williams backed her car up, and Thompson called to victim, "Hey, little girl. Hey, little girl. Are you okay? Are you okay?" But defendant and victim kept walking. Thompson concluded victim had not heard her. The women then witnessed defendant push victim into the abandoned garage.

Timothy McGee testified that after receiving the telephone call he went outside and met Nicole who was "terrified". When he confronted him, defendant was clad only in a fishnet shirt. Defendant told him, "Ain't nobody raping nobody". When victim exited the vacant building, "[s]he was crying like she was terrified. She was—she was very upset, shaking".

I find the relevant facts of the instant case very similar to those in the Southern District case of *State v. Warren*, 779 S.W.2d 751 (Mo.App.1989). There, the defendant was also charged with sodomy and felonious restraint and, as here, argued on appeal that the evidence was insufficient to establish he had exposed the victim to a substantial risk of serious physical injury. The court summarized the evidence thus:

> Around 1:00 a.m., the victim, age 18, 5' 2" tall, weighing 100 lbs, was walking to a friend's home after having an argument with his parents. As the victim approached the apartment house in which the defendant lived, he encountered the defendant. The defendant talked to the victim who kept walking. The defendant was 41 years old, bigger and stronger than the victim. As they passed the apartment house, the defendant grabbed the victim and pulled his arms up behind his back.

---

1. Defendant testified that he pled guilty to the robbery in December of 1992 and that he was placed on probation in April of 1993. The offenses here occurred on July 3, 1993.

He told the victim not to speak or escape. The defendant pulled the victim into the apartment elevator. He forced the victim into his apartment and to disrobe. The defendant proceeded to commit anal sodomy upon the victim. He kept the victim in the apartment three to four hours. The victim testified he was scared the defendant was going to kill him. The victim decided defendant would have to kill him. He put on his clothes and left the apartment. At about 6:00 a.m. the victim approached the security guard, crying, and told the guard he had been raped. Police were summoned and took the victim to the station.

*Id.* at 752.

In affirming, Judge Maus, speaking for the court, stated, "[w]hether or not unlawful restraint exposes a victim to a risk of serious physical injury *is to be determined from all of the circumstances.*" *Id.* at 753 (emphasis added). "It is appropriate to place emphasis upon the *propensity and the ability of the defendant to inflict such injury.*" *Id.* (emphasis added). The court noted that while the evidence of defendant's size and strength should have been more specific:

> There was evidence he was bigger and stronger than the victim. His apparent strength was enough to cause the victim to be afraid the defendant would kill him. By twisting the victim's arms behind his back, the defendant forced the victim to defendant's apartment. The defendant said he was unemployed because he was suffering from a nervous disorder and depression. Before encountering the victim, the defendant had been shooting pool in a tavern. When he reached the apartment, he took some medication for depression. The victim submitted because of the arm twisting and fear. *Had he resisted, the evidence carries a reasonable inference the defendant would have accomplished his purpose by further violence. The jury was entitled to conclude that under those circumstances the defendant's determination to engage in his perverted attack upon the victim subjected the victim to a substantial risk of serious physical injury.*

*Id.* (emphasis added).

I am unable to significantly distinguish the relevant facts of *Warren* from those of the instant case. Here, we similarly do not have any direct height or weight evidence. However, we know victim was a thirteen-year-old child and defendant a thirty-three-year old felon. He was obviously bigger and stronger than victim. He forced victim into the vacant building, forced a pipe into her mouth, and forced his penis into her mouth. Victim was observed, in all accounts but defendant's, as "crying", "scared", "terrified". Had she resisted or attempted to escape, the evidence carries a reasonable inference the defendant would have accomplished his purpose by further violence. In my opinion, the jury was entitled to conclude that, under the circumstances here, defendant's determination to engage in his perverted attacks upon victim subjected her to a substantial risk of serious physical injury. I would therefore affirm the conviction of felonious restraint.