Tina Marie **HYATT**, individually and as next friend of Christina Anderson and Anthony Anderson II, and Frank Porzenski, Appellants,

v.

**TRANS WORLD AIRLINES, INC.**, City of St. Louis, Anthony Anderson, Mary Anderson, John Beck and Lisa Young, Respondents.

No. 69663.

Missouri Court of Appeals, Eastern District, Division Five.

March 25, 1997.

Charles W. Armbruster, III, Wood River, Illinois, for Appellants.

Paul B. Lee, Leo W. Nelsen, St. Louis, for TWA.

R.E. Keaney, St. Louis, for City of St. Louis & Beck & Young.

Corinne R. Coston, Mary Ann Weems, Clayton, for Anderson.

CRANDALL, Judge.

Plaintiffs, Tina Marie Hyatt, individually and as next friend of Anthony Anderson II and Christina Anderson, and Frank Porzenski, brought an action against defendants, Trans World Airlines, Inc. (TWA), Anthony Anderson, Mary Anderson, the City of St. Louis, John Beck, and Lisa Young, in multiple counts for, *inter alia*, fraud, breach of contract, intentional infliction of emotional distress, false imprisonment, tortious interference with contract, and related punitive damage claims allegedly arising from defendants' actions in failing to comply with an "Unaccompanied Minor Child Care Service Request" form at the conclusion of a TWA flight. Plaintiffs appeal from the judgment of the trial court dismissing the fraud and corresponding punitive damage claims; from the trial court's grant of summary judgment in favor of TWA on the breach of contract claim; and from the trial court's grant of summary judgment in favor of various defendants on the tortious interference with contract claims, the false imprisonment claims, and the intentional infliction of emotional distress claims, and the corresponding claims for punitive damages. We affirm.

The record reveals that Anthony Anderson (father) purchased airline tickets from TWA for his minor children, Anthony Anderson II and Christine Anderson (children), to travel from the home of Tina Marie Hyatt (mother) in Florida to St. Louis, Missouri, on December 18, 1992. In conjunction with the purchase, he instructed TWA that he would pick up the children at the St. Louis airport. The children were to spend their entire Christmas school vacation with father in accordance with the most recent modification of mother and father's dissolution decree.

Mother took the children out of school early; and without notifying father, paid an additional $50.00 to TWA to change the children's arrival in St. Louis to December 16. At that time, she executed an "Unaccompanied Minor Child Care Service Request" form authorizing TWA to release the children to their grandfather, Frank Porzenski. Father became aware of the change in the children's flight. Accompanied by his then wife, Mary Anderson, and by two St. Louis police officers, John Beck and Lisa Young, father met the flight. The police officers did not turn the children over to Porzenski, but released them to father.

Plaintiffs brought the present action against the defendants, filing several amended, multiple-count petitions. We set forth only those counts pertinent to this appeal. In Count I of plaintiffs' amended and second amended petitions, mother sought damages from TWA for breach of contract. In Counts II and III of plaintiffs' amended petition, mother sought damages from TWA for fraud and punitive damages, respectively. In Counts VI and XII of plaintiffs' second amended petition and Counts XXIII and XXV of the fourth amended petition, mother

sought damages for tortious interference with contract from the two police officers and from father and Mary Anderson; and in Counts VII and XIII of the second amended petition and Counts XXIV and XXVI of the fourth amended petition, she sought punitive damages relative to those counts. In Counts I, III, XV, XVII, XIX, and XXI of plaintiffs' fourth amended petition, Porzenski and mother as next friend of the children sought damages from the two police officers and St. Louis for false imprisonment; and in Counts II, IV, XVI, XVIII, XX, and XXII of the fourth amended petition, she sought corresponding punitive damages. In Counts V, VII, IX, and XI of plaintiffs' fourth amended petition, mother and Porzenski sought damages for intentional infliction of emotional distress from father and Mary Anderson; and they also sought punitive damages related thereto in Counts VI, VIII, X, and XII of the fourth amended petition.

The trial court granted TWA's motion to dismiss the fraud and related punitive damage claims for failure to state a claim upon which relief could be granted. It granted TWA's motion for summary judgment on mother's breach of contract claim. It granted father's and Mary Anderson's motions for summary judgment on the claims for tortious interference with contract, for intentional infliction of emotional distress, and for punitive damages related to those claims. It granted summary judgment in favor of St. Louis and the two police officers on the false imprisonment and related punitive damage claims.

■ In their first point, plaintiffs contend the trial court erred in granting TWA's motion to dismiss mother's claims for fraud and punitive damages. On appeal, our review of a motion to dismiss for failure to state a claim requires that we consider the pleadings, allowing them their broadest intendment and treating all facts alleged as true, and determine whether the petition invokes substantive principles of law. *Jackson v. Christian Hosp. Northeast–Northwest,* 823 S.W.2d 137 (Mo.App.1992). Under Rule 55.15, all averments of fraud must state with particularity the circumstances constituting fraud. The pleader must allege ultimate facts and not evidentiary conclusions. *City*

*of Fenton v. Executive Int'l Inn, Inc.,* 740 S.W.2d 338, 339 (Mo.App.1987).

In Count II of plaintiffs' amended petition, mother alleged that she purchased two tickets from TWA and that TWA agreed that the children would be permitted to leave the gate area only with Porzenski. She further alleged in pertinent part:

11. That at the time of entering into the aforementioned contract, [TWA's] agents and employees made certain statements to [mother] of a material nature, to wit:

a. That [TWA] would only release the minor children to the person or persons identified on the contract entered into between the parties.

b. That [TWA] would require the individual to present a photo I.D. to confirm their identity before releasing the minor children.

■ The elements of fraud are (1) a representation, (2) the falsity of the representation, (3) the materiality of the representation, (4) the speaker's knowledge of the falsity of the representation or ignorance of its truth, (5) the speaker's intent that the representation should be acted upon by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of the falsity of the representation, (7) the hearer's reliance on the truth of the representation, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximately caused injury. *Empire Bank v. Walnut Products, Inc.,* 752 S.W.2d 404, 406 (Mo.App.1988).

■ A review of plaintiffs' petition reveals that mother did not plead particular facts either supporting her allegation that TWA's representation was false at the time it was made or showing that TWA's intent at the time of the representation was not to act as it represented. The facts as pleaded do not indicate the falsity of TWA's representations *at the time they were made.* Thus, TWA's alleged statements were not misrepresentations of then existing fact. *See City of Fenton,* 740 S.W.2d at 339. At best, as pleaded, TWA's statements constituted a promise, and the breach of a promise does not create an action in fraud. *See id.* The

allegations in plaintiffs' petition were not sufficient to support a cause of action for fraud.

■ In light of the court's dismissal of mother's fraud claim against TWA, her claim for punitive damages related to TWA's alleged fraud also fails. A punitive damage claim is not a separate action; but rather it must be brought in conjunction with a claim for actual damages. *Klein v. General Elec. Co.*, 728 S.W.2d 670, 671 (Mo.App.1987).

The trial court did not err in dismissing mother's claim for fraud against TWA for failure to state a cause of action and her claim for punitive damages related thereto. Plaintiffs' first point is denied.

In their second point, plaintiffs assert the trial court erred in granting summary judgment in favor of TWA on mother's breach of contract claim. Mother argues that there was a genuine issue of material fact as to whether a contract existed between her and TWA whereby TWA agreed to release the children to the custody of Porzenski at the end of the flight.

Summary judgment is appropriate where the pleadings, depositions, formal discovery responses, and affidavits on file show that there are no genuine issues of material fact and that the moving party is entitled to judgment as matter of law. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo.banc 1993). When the movant is a defending party, Rule 74.04(c) requires that the movant establish a right to judgment by showing (1) facts which negate any one of claimant's elements, (2) that the claimant will not be able to produce sufficient evidence to permit the trier of fact to find the existence of any one of the claimant's elements, and (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's affirmative defense. *Id.* at 381. Once the movant has met the burden imposed by Rule 74.04(c), the only recourse for the non-movant is to show that one or more of the material facts is genuinely disputed. *Id.* If the non-movant cannot contradict the showing of the movant, judgment is properly entered against the non-movant because the movant has already established a right to judgment as a matter of law. *Id.* A genuine

issue exists only where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts. *Id.* at 382.

■ The essential elements of a contract are: (1) competency of the parties to contract; (2) subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *Shapiro v. Butterfield*, 921 S.W.2d 649, 652 (Mo.App. E.D. 1996). Mother contends that only the last three elements required for a valid contract are at issue.

■ In the instant action, despite allegations in the second amended petition to the contrary, mother admitted that she did not purchase the tickets to transport the children from Florida to St. Louis. Thus, there was no dispute before the trial court as to who purchased the original tickets from TWA. Those tickets were purchased by father; and in return for father's paying consideration for the tickets, TWA agreed to transport the children to St. Louis. In addition, father notified TWA that he was the only person entitled to pick up the children upon arrival in St. Louis. The contract for the transportation and delivery of the children was therefore between father and TWA. Mother was not a party to the original contract between father and TWA because she did not purchase the tickets.

On appeal, mother proposes the existence of a separate agreement with TWA regarding the release of custody of the children which arose when she paid $50.00 to change the date of the children's departure. Mother, however, did not plead the existence of a separate contract with TWA, but rather alleged that she purchased the original tickets from TWA. Further, mother's deposition testimony evinced her understanding that she purchased only a change in the date of the children's departure when she paid the additional sum of $50.00 to TWA. There were no issues of material fact as to the existence of a separate contract between mother and TWA regarding the delivery of the children. The trial court properly granted summary judgment in favor of TWA on mother's breach of contract action because

TWA established that it was entitled to judgment as a matter of law. Plaintiffs' second point is denied.

In their third point, plaintiffs contend the trial court erred in granting summary judgment in favor of defendant, Mary Anderson[1], on mother's claims for tortious interference with mother's contract with TWA and for punitive damages related thereto. One of the essential elements of a tortious interference with contract action is the existence of a contract, the breach of which is caused by defendant's interference. *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 316 (Mo.banc 1993). In view of our holding that no contract existed between mother and TWA, the trial court properly granted summary judgment in favor of Mary Anderson on mother's tortious interference with contract claim because Mary Anderson established that the facts negated one of the elements of mother's tortious interference of contract claim and that she was entitled to judgment as a matter of law. When the tortious interference with contract claim fails, the corresponding claim for punitive damages also fails. *See Klein*, 728 S.W.2d at 671. Plaintiffs' third point is denied.

In their fourth point, plaintiffs challenge the trial court's grant of summary judgment in favor of defendant, Mary Anderson, on mother's and Porzenski's claims of intentional infliction of emotional distress. Plaintiffs argue that the standard enunciated in *Bass v. Nooney Co.*, 646 S.W.2d 765, 772–773 (Mo. banc 1983), for establishing the negligent infliction of emotional distress has been erroneously expanded to cases involving the intentional infliction of emotional distress. We review the court's grant of summary judgment in accordance with the principles enunciated in *ITT Commercial*, 854 S.W.2d at 380–382, and set forth previously in this opinion.

■ Missouri courts recognize the tort of intentional infliction of emotional distress. *See, e.g., Rooney v. National Super Markets, Inc.*, 668 S.W.2d 649, 651 (Mo.App.1984); *Young v. Stensrude*, 664 S.W.2d 263, 265 (Mo.App.1984); *Pretsky v. Southwestern Bell Tel. Co.*, 396 S.W.2d 566, 568 (Mo.1965); Restatement (Second) of Torts, § 46(1) (1965). The tort has four elements: (1) the defendant must act intentionally or recklessly; (2) the defendant's conduct must be extreme and outrageous; and (3) the conduct must be the cause (4) of severe emotional distress. *Boes v. Deschu*, 768 S.W.2d 205, 207 (Mo.App. 1989).

According to *Bass*, 646 S.W.2d at 772, the emotional distress necessary to establish a cause of action for the negligent infliction of emotional distress "must be medically diagnosable and must be of sufficient severity so as to be medically significant." Some Missouri courts have extrapolated this standard to cases involving the intentional infliction of emotional distress; and focusing on the plaintiff's failure to seek medical treatment for the emotional distress, have denied recovery on the ground that the emotional distress did not satisfy the second prong of the *Bass* test which required that the emotional distress be of sufficient severity so as to be medically significant. *See, e.g., Childs v. Williams*, 825 S.W.2d 4, 10–11 (Mo.App.1992) (summary judgment proper where plaintiff had no medical expert to testify as to the medical significance of her emotional distress and psychologist who was identified as plaintiff's expert stated he could not comment on whether her mental problems were medically significant); *Greco v. Robinson*, 747 S.W.2d 730, 735–736 (Mo.App.1988) (summary judgment proper where neither plaintiff sought medical care and no physician would testify at trial as to either plaintiff's mental condition); *Hayes v. Dunn*, 709 S.W.2d 164, 165 (Mo.App.1986) (judgment in favor of plaintiff reversed because the plaintiff did not see a doctor and no medical testimony was offered at trial).

Although plaintiffs frame the issue on appeal as a challenge to the expansion of the *Bass* test to intentional infliction of emotional distress cases, we decline to address that issue. Rather, the pertinent inquiry is whether mother and Porzenski established a

---

1. Although the trial court also granted summary judgment in favor of father on this claim, plaintiffs contend on appeal that they are not addressing the trial court's disposition of any of their claims against father because he was discharged in bankruptcy.

cause of action as a matter of law against Mary Anderson for the intentional infliction of emotional distress, particularly whether they established that Mary Anderson's conduct was "extreme and outrageous."

"It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery . . . ." Restatement (Second) of Torts § 46 cmt. h (1965). Although case law does not provide us with a precise definition of "extreme and outrageous," *Boes*, 768 S.W.2d at 207, the test adopted by Missouri courts for actionable conduct is that the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Rooney*, 668 S.W.2d at 651 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). As the Restatement observes, "The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened . . . to occasional acts that are definitely inconsiderate and unkind." Restatement (Second) of Torts § 46 cmt. d (1965).

■ Here, the allegations in plaintiffs' petition against Mary Anderson were identical for both mother and Porzenski, to wit:

That on or about December 16, 1992, Defendant, Mary Anderson, did intentionally seize and take custody of the minor children from Lambert Field when [she] had no entitlement to do so.

That after obtaining custody of the minor children from the airport . . ., Mary Anderson, then took the minor children to whereabouts unknown to Plaintiff, and further prevented Plaintiff or anyone in Plaintiff's family from contacting the minor children for three weeks.

Plaintiffs' petition failed to plead that Mary Anderson's conduct was extreme and outrageous, an essential element of the action against her. Further, the record before the trial court on the motion for summary judgment did not offer any additional facts regarding Mary Anderson's conduct which were different from the allegations pleaded.

Mary Anderson's conduct cannot be characterized as so extreme or outrageous as to be tortious. Thus, neither mother nor Porzenski established the requisite elements for intentional infliction of emotional distress. The trial court did not err in granting summary judgment on the claims related to the intentional infliction of emotional distress. Where the claims for intentional infliction of emotional distress fail, the punitive damage claims related thereto also fail. *See Klein*, 728 S.W.2d at 671. Plaintiffs' fourth point is denied.

In their final point, plaintiffs contend the trial court erred in granting summary judgment in favor of the police officers and St. Louis, because there remained genuine issues of fact to be resolved on those claims. The claims pertinent to this allegation of error involve mother's claims against the police officers for tortious interference with her contract with TWA and for punitive damages related thereto; the claims of mother on behalf of the children against the police officers and St. Louis for false imprisonment and the punitive damage claims related thereto; and the claims of Porzenski against St. Louis and the police officers for false imprisonment and the related punitive damage claims. We review the court's grant of summary judgment in accordance with the principles enunciated in *ITT Commercial*, 854 S.W.2d at 380–382, and set forth previously in this opinion.

As to mother's contention concerning her tortious interference with contract claims, we held previously in this opinion that the trial court properly granted summary judgment on mother's contract action because there was no contract between mother and TWA. An essential element of a tortious interference with contract action is the existence of a contract, the breach of which is caused by defendant's interference. *Nazeri*, 860 S.W.2d at 316. In view of our holding that there was no contract, the trial court did not err in granting summary judgment in favor of the police officers on mother's tortious interference with contract claims. The related punitive damage claims also must fail. *See Klein*, 728 S.W.2d at 671.

We next address plaintiffs' contention that summary judgment on the false imprisonment claims of Porzenski and mother on behalf of the children against the police officers and St. Louis was improper because there were material issues of fact.

False imprisonment occurs when the plaintiff is confined by the wrongdoer without legal justification. *Desai v. SSM Health Care*, 865 S.W.2d 833, 836 (Mo.App. E.D.1993). The constituent elements of false imprisonment are the detention or restraint of the plaintiff against his or her will and the unlawfulness of the detention or restraint. *Id.*

As to Porzenski's false imprisonment claims against the police officers, the record before the court on the motion for summary judgment established that the police officers told Porzenski to remain in the waiting room area of the airport and did not permit him either to approach the children or to speak with them until they were in father's custody. The police officers did not threaten Porzenski or use physical force to keep him from the children. After the children were in father's custody, accompanied by the police, Porzenski walked with the children and father to the baggage carousel. There Porzenski kissed the children and left the airport.

For Porzenski to establish his false imprisonment claims, it was essential that he show the restraint imposed on him was total and not merely an obstruction of his right to go where he pleased. Here, there was no evidence that Porzenski was not free to leave the waiting room area or to exit the airport. The police officers merely kept him away from the children until they were in their father's care, at which point the police permitted Porzenski to have contact with the children. The police remained with Porzenski and the children in the airport for the sole purpose of keeping the peace. The restraint imposed on Porzenski was not complete and thus did not constitute false imprisonment as a matter of law.

As to the false imprisonment claims by mother on behalf of the children, the record on the motion for summary judgment established that the police officers placed the children in the custody of their father, instead of Porzenski, at the airport. These facts do not establish a cause of action for false imprisonment because the elements of false imprisonment require that the children be restrained without legal justification. Here, it was necessary that the minor children be entrusted to the care and custody of an adult upon arrival of the TWA flight. The police officers acted in accordance with a court document in the form of a modification of a decree of dissolution which indicated that father was entitled to custody of the children at that time. The police merely escorted the children to the person designated as custodian in the court document. The actions of the police officers were legally justified and did not constitute false imprisonment as a matter of law.

As to the liability of St. Louis for the false imprisonment of Porzenski and the children, St. Louis' liability was predicated on its status as the employer of the police officers. In a cause of action premised on respondeat superior, the plaintiff cannot recover against the employer if the plaintiff does not have grounds to recover against the employee. *McGuckin v. City of St. Louis*, 910 S.W.2d 842, 844–845 (Mo.App. E.D.1995). Where the actions of the police officers did not constitute false imprisonment, St. Louis cannot be held vicariously liable for those actions. Plaintiffs thus were not entitled to recover against St. Louis.

The trial court properly granted summary judgment in favor of the police officers and St. Louis on the false imprisonment claims. Because the claims for false imprisonment fail, the corresponding claims for punitive damages also fail. *See Klein*, 728 S.W.2d at 671. In view of this holding, we do not reach the issue of whether the police officers were entitled to official immunity for the tort of false imprisonment. Plaintiffs' fifth point is denied.

The judgment of the trial court is affirmed.

AHRENS, C.J. and JOSEPH M. ELLIS, Special Judge, concur.