**STATE of Missouri, Respondent,**

v.

**Henry FRAZIER, Appellant.**

**No. WD 50321.**

Missouri Court of Appeals,
Western District.

June 4, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 30, 1996.

Application to Transfer Denied
Sept. 17, 1996.

Rosemary E. Percival, Asst. Public Defender, Kansas City, for appellant.

John Munson Morris, Asst. Attorney General, Jefferson City, for respondent.

Before FENNER, C.J., P.J., and HANNA and ELLIS, JJ.

FENNER, Chief Judge.

Appellant, Henry Frazier, appeals his conviction for the class C felony of tampering in the first degree.

Appellant was observed by Officer Brian Francis of the Kansas City Police Department operating a stolen Chevy truck. Appellant was arrested and taken into custody. After appellant was arrested, he was questioned by Detective Dennis Gargotto of the Kansas City Police Department. Appellant waived his *Miranda* rights and told Detective Gargotto that he had rented the truck from someone named John in exchange for property worth $20. Appellant admitted that he was aware that the truck had a broken steering column and a broken window. Appellant told Detective Gargotto that lots of vehicles were like that and the questioning stopped when appellant asked for an attorney.

On appeal, Frazier argues that the trial court plainly erred in failing to declare a mistrial, *sua sponte,* based on Detective Gargotto's testimony that Frazier asserted his right to remain silent after being asked to explain incriminating evidence.

A defendant is entitled to relief under the "plain error" rule only when the alleged error so substantially affects the rights of the accused that a manifest injustice or a miscarriage of justice would inexorably result if left uncorrected. *State v. Tate,* 850 S.W.2d 385, 388 (Mo.App.1993). The "plain error" rule should be used sparingly and is limited to those cases where there is a strong, clear demonstration of manifest injustice or a miscarriage of justice. *State v. Collis,* 849 S.W.2d 660, 663 (Mo.App.1993). The question of whether to consider a matter as plain error is discretionary with an appellate court. Rule 30.20; *State v. Collis,* 849 S.W.2d at 663. We consider appellant's allegation of plain error *ex gratia.*

It is well established that a defendant's post-arrest silence or language representing silence cannot be used as evidence to incriminate him. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). However, once the defendant waives his right to remain silent, all speech or non-silence, by

a defendant may be admitted into evidence and remarked on. *State v. Tims,* 865 S.W.2d 881, 885 (Mo.App.1993). The defendant can revoke the waiver of his right to remain silent at any time, at which point his silence is again protected. *Id.* at 885.

▮ Once the defendant revokes the waiver of his right to remain silent, the state can show the circumstances under which an interrogation was terminated. *State v. Hollis,* 584 S.W.2d 137, 145 (Mo.App.1979). Nonetheless, any evidence describing the conclusion of an interrogation must be carefully scrutinized. *Tims,* 865 S.W.2d at 886. Evidence in regard to the conclusion of an interrogation which reveals that the defendant was failing to answer a direct charge of guilt is improper. *Id.* Likewise, evidence which reflects that the defendant "clammed up" under circumstances calling imperatively for an admission or denial should not be admitted. *Id.* However, to the extent that no inference of guilt can reasonably be drawn from evidence describing the conclusion of an interrogation, it is admissible. *Id.*

In *Tims,* the court further held that evidence that an interrogation was terminated when the defendant requested an attorney is improper because it may be perceived as a remark which would be made by a guilty party. *Id.,* (*citing State v. Martin,* 797 S.W.2d 758 (Mo.App.1990)). Although the court found this testimony to be improper, it did not find it prejudicial considering the overwhelming evidence supporting the defendant's conviction. *Id.*

▮ We believe that evidence that an interrogation was terminated when a defendant requested an attorney is only improper when the circumstances are such that an inference of guilt can be drawn from the testimony. Such as when the testimony reflects that the defendant requested an attorney in direct response to a charge of guilt or under circumstances calling imperatively for an admission or denial. To the extent that *Tims* can be argued to hold otherwise, we disagree.

In *Tims,* the court relied upon *State v. Martin,* 797 S.W.2d 758 (Mo.App.1990), for its holding that it is improper to allow testi-

mony that an interrogation ceased when the defendant requested an attorney. In *Martin,* the testimony offered in this regard was much more extensive and direct than in the case at bar. In *Martin,* the officer who interrogated the defendant testified as follows:

> PROSECUTOR: Okay. After this statement had been made to you, did you take any further steps to try to make a report of it in any way?
>
> OFFICER: Yes, sir, I did.
>
>> DEFENSE COUNSEL: Object, your Honor....
>>
>> THE COURT: ... I will overrule the objection.
>
> * * *
>
> PROSECUTOR: Did you make any other request to try to make a visual record of what happened?
>
> OFFICER: Yes, sir, I did.
>
> PROSECUTOR: And what was that?
>
> OFFICER: I asked him if he would be willing to give us a statement on videotape.
>
> PROSECUTOR: When you asked him that, what happened?
>
> OFFICER: He said that he thought he should talk to an attorney first.
>
> PROSECUTOR: Is that the first mention that he had made of wanting to talk to an attorney?
>
> OFFICER: Yes, sir, it is.
>
> PROSECUTOR: And when he asked to talk to an attorney, did you in fact make arrangements for him to do so?
>
> OFFICER: I did.
>
> PROSECUTOR: After that was completed, did you renew your request?
>
> OFFICER: No, sir. After he had talked to an attorney, he indicated he did not wish to make any further statement.

*Martin,* 797 S.W.2d at 764.

In *Martin,* the testimony in regard to the defendant's request to speak to an attorney came after a detailed account of appellant's confession where the prosecutor continued to question the interrogating officer regarding the defendant's subsequent request to speak to an attorney and the defendant's refusal to

answer questions after he had exercised his right to counsel. *Id.* at 763–64. Unlike the case at bar, *Martin* presented circumstances such that an inference of guilt could be drawn from the evidence presented in regard to appellant's request for counsel.

■ In the case at bar, the record reflects the following testimony in regard to appellant's statement to Detective Gargotto:

PROSECUTOR: Can you tell the ladies and gentlemen of the jury what this defendant told you with respect to the operation of the Chevy pickup that he was driving?

DETECTIVE GARGOTTO: Yes, sir. Mr. Frazier admitted driving the vehicle. He stated that he had rented the truck from a man he knew only as John. And that he traded something that he valued at $20 for the vehicle. He also told me that he saw the broken window and broken steering column on the truck.

PROSECUTOR: Was the defendant able to offer any explanation for the damage to this pickup?

DETECTIVE GARGOTTO: No, sir.

PROSECUTOR: What if anything did he say in response to that?

DETECTIVE GARGOTTO: He didn't say anything. Shortly into the interview, I believe seven minutes into the interview, he asked for an attorney, at which time the interview ceased.

PROSECUTOR: Did he tell you anything about other cars?

DEFENSE COUNSEL: Your Honor, I'm going to object.

(Counsel approached the bench and the following proceedings were had:)

DEFENSE COUNSEL: I'm not sure what he is getting at. It's rather vague. It might lead him into the rest of that paragraph.

THE COURT: What other car?

PROSECUTOR: This statement the defendant said, lots of other cars are like that in response to questions about damages to the vehicle. It wasn't in reference to anything other than the fact.

DEFENSE COUNSEL: Rephrasing the question might solve the problem,

but I'm afraid by asking him what he said about other cars that that may get into the rest of that report.

PROSECUTOR: I'm not getting into anything.

THE COURT: Actually, it's exculpatory.

DEFENSE COUNSEL: I don't want the officer to make a mistake about what he says.

THE COURT: Overruled.

(The proceedings returned to open court.)

PROSECUTOR: Do you have a copy of police department Form 107 that you executed in this case?

DETECTIVE GARGOTTO: In regards to my interview with Mr. Frazier, yes, sir.

PROSECUTOR: I would ask that you silently read that.

DETECTIVE GARGOTTO: Yes, sir.

PROSECUTOR: Okay. Now, before the interview was—I'll ask this. Is your memory refreshed now?

DETECTIVE GARGOTTO: Yes, sir.

PROSECUTOR: Okay. Before the interview was ended, did you ask the defendant about the damage to this particular vehicle?

DETECTIVE GARGOTTO: Only about the window and the steering column, yes.

PROSECUTOR: What was his response when you asked him about this damage?

DETECTIVE GARGOTTO: That he saw the broken wing and the broken steering column.

PROSECUTOR: Did he have anything else to say about that?

DETECTIVE GARGOTTO: He said that lots of cars are like that.

To this point, Detective Gargotto's testimony taken as a whole does not reflect that appellant refused to answer a direct charge of guilt or became silent under circumstances calling imperatively for an admission or denial. It was not error, plain or otherwise, for the state to show that appellant's interrogation ceased at his request. Taken as a whole, Detective Gargotto's testimony reflects that when appellant was asked about

the damage to the vehicle, appellant responded that "lots of cars are like that." Subsequent thereto, but shortly into the interrogation, appellant asked for an attorney and the interrogation ceased. Appellant's request for an attorney was not related to any question, direct or otherwise, as this matter was clarified by the prosecutor. At this point, Detective Gargotto's statement that appellant requested an attorney was not error as it was not presented in a manner to reflect upon appellant's guilt and it was not emphasized in an effort to create an adverse inference.

■ However, reference to appellant's request to speak with an attorney did not stop here. During cross-examination, Detective Gargotto testified as follows:

Q: And you've indicated that you began questioning him at 1033 hours?

A: That is correct.

Q: And the questioning ended at 1043 hours?

A: When he asked for his attorney.

Q: Now, the statement that you are referring to is one that—this is a report that you wrote after you questioned Mr. Frazier?

A: Yes, ma'am.

Q: This is not a signed written statement in his own handwriting. This is just a paraphrase of what actually occurred; is that correct?

A: That is correct. When he asked for an attorney, . . .

We believe this gratuitous and repetitious emphasis by Detective Gargotto in regard to appellant having requested an attorney was designed to incriminate him. Nonetheless, since appellant did not object to this testimony or request any relief from the trial court, as stated previously, our review is limited to plain error. Under plain error review, the burden is on appellant to establish manifest injustice or a miscarriage of justice, not mere prejudice. *State v. Cline,* 808 S.W.2d 822, 824 (Mo. banc 1991). "If the evidence presented in a criminal case is not sufficient to sustain a conviction, plain error affecting de-

fendant's substantial rights is involved resulting in manifest injustice." *State v. Fosdick,* 776 S.W.2d 54, 56 (Mo.App.1989).

■ In the case at bar, the evidence of appellant's guilt was otherwise clear. He was seen driving the vehicle shortly after it was stolen. Although the vehicle was in good condition when stolen, it had a broken window and steering column when appellant was driving it. The dash of the vehicle was torn and the glove box was ripped open. Additionally, papers and trash were strewn throughout the interior. Under the facts of this case we cannot say that we have a firm conviction that manifest injustice or a miscarriage of justice resulted from the emphasis of Detective Gargotto to appellant's request for an attorney.

Judgment affirmed.

HANNA, J., concurs.

ELLIS, J., concurs in separate concurring opinion.

ELLIS, Judge, concurring.

I concur only in the result reached by the majority. I disagree with the majority's holding that Detective Gargotto's testimony regarding Mr. Frazier's request for an attorney "was not error, plain or otherwise . . . as it was not presented in a manner to reflect upon appellant's guilt." Op. at 382. To the contrary, I believe it was error. I write separately to explain my reasoning. I concur in the result only because the issue comes to us for exercise of our discretion to review for plain error. While the error is egregious, I cannot say that it resulted in a manifest injustice or miscarriage of justice.

Mr. Frazier was charged with one count of tampering in the first degree, § 569.080.1(2).[1] This section provides:

1. A person commits the crime of tampering in the first degree if:

\* \* \*

(2) He knowingly receives, possesses, sells, alters, defaces, destroys or unlawfully operates an automobile, airplane, motorcycle,

---

1. All statutory references are to RSMo 1994 un-

less otherwise noted.

motorboat or other motor-propelled vehicle without the consent of the owner thereof. The State specifically charged Mr. Frazier with knowingly operating a motor vehicle without the consent of the owner. "The elements of this offense are (1) that the defendant knowingly receives, possesses, sells, alters, defaces, destroys or unlawfully operates (2) an automobile (3) without the consent of the owner." *State v. Kelley,* 901 S.W.2d 193, 202 (Mo.App. W.D.1995).

The evidence at trial, leading up to the disputed testimony of Detective Gargotto, revealed that Tao Paletaoga owned a grey 1986 Chevy Silverado pickup truck which, when he parked it outside his house on January 28, 1994, was in excellent condition. The next morning, he noticed the truck was missing and called the police. Subsequently, Officer Francis noticed someone drive the truck into an alley, and after about 30 seconds, observed someone hurriedly leave the alley on foot. He drove into the alley to investigate. He saw that the truck had a broken left-wing window and broken steering column. He left the truck when interrupted by a call from another officer but, about five minutes later, observed Mr. Frazier driving the same truck. He followed it to a motel where Mr. Frazier parked the truck, exited, and started walking away. Officer Francis then stopped Mr. Frazier to question him about the truck. Mr. Frazier denied stealing the truck.

Detective Gargotto testified that he questioned Mr. Frazier on January 31, 1994. Detective Gargotto testified Mr. Frazier admitted he was driving the truck and admitted that he saw the broken steering column and window. At this point, the following colloquy between the assistant prosecutor and Detective Gargotto occurred:

Q. Was the defendant able to offer any explanation for the damage to this pickup?

A: No, sir.

Q: What if anything did he say in response to that?

A: He didn't say anything. Shortly into the interview, I believe seven minutes into the interview, he asked for an attorney, at which time the interview ceased.

Post-arrest silence or a defendant's language representing silence cannot be used as evidence to incriminate him. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). "It cannot be remarked on, testified to nor implied in the prosecution's presentation of its case." *State v. Tims,* 865 S.W.2d 881, 885 (Mo.App. E.D.1993). Moreover, a defendant's silence when confronted with a charge of guilt made under circumstances calling imperatively for an admission or denial, or which could lead a jury to conclude that only a guilty person would have remained silent cannot be admitted. *Id.*

Nevertheless, testimony merely relating the conclusion of an interrogation after a defendant waived his right to silence is not prejudicial error. *Id.* at 886. However,

Any evidence describing these events must be carefully scrutinized. If the analysis of problematic testimony reveals that the defendant was failing to answer a direct charge of guilt, it should not be admitted. Or, if this was "a case where the defendant clammed up ... under circumstances calling imperatively for an admission or denial," the evidence should likewise be refused.

*Id.* (citations omitted).

Detective Gargotto's testimony raises two issues. The first is the admissibility of the fact that Mr. Frazier terminated the interrogation. The second is the admissibility of the fact that he requested an attorney. In my view, both were protected "silence" and should not have been admitted.

The State has the burden and must prove each and every element of a criminal offense, and if it fails to do so, any conviction obtained must be reversed. *State v. Bromley,* 840 S.W.2d 288, 289 (Mo.App. W.D.1992). In this case, it was incumbent on the State to prove that Mr. Frazier knew the truck was stolen but drove it anyway. When Mr. Frazier was asked by Detective Gargotto to explain the damage to the truck, he requested an attorney, thereby ending the interrogation. Detective Gargotto's testimony regarding Mr. Frazier's request for an attorney went far beyond merely explaining the conclusion of an interrogation. It implied to the

jury that Mr. Frazier "clammed up" when confronted with a question imputing to him knowledge that the truck was stolen. From the evidence of his silence, the jury could readily conclude that only a guilty person would refuse to answer or remain silent and therefore could just as readily conclude that Mr. Frazier knew the truck was stolen when he was driving it. Detective Gargotto's testimony was not a mere explanation of why the interrogation concluded but rather was an attempt to prove Mr. Frazier's guilt.

This conclusion is reenforced by the fact that Detective Gargotto subsequently made two unresponsive references to Mr. Frazier's request for an attorney during cross-examination. During cross-examination, Detective Gargotto testified as follows:

Q: And you've indicated that you began questioning him at 1033 hours?

A: That is correct.

Q: And the questioning ended at 1043 hours?

A: When he asked for his attorney.

Q: Now, the statement that you are referring to is one that—this is a report that you wrote after you questioned Mr. Frazier?

A: Yes, ma'am.

Q: This is not a signed written statement in his own handwriting. This is just a paraphrase of what actually occurred; is that correct?

A: That is correct. When he asked for an attorney, . . .

There can be no question that Mr. Frazier's post-arrest termination of the interrogation by requesting an attorney was used as evidence to incriminate him.

The second issue arising from Detective Gargotto's testimony makes it doubly prejudicial. "A request for an attorney may be perceived to be a remark which would be made by a guilty party. It is an effective reclamation of defendant's right to silence and thus is not proper comment in testimony." *Tims*, 865 S.W.2d at 886. Thus, in the case at bar, Detective Gargotto's testimony allowed the jury to infer Mr. Frazier's guilt for two reasons. First, he terminated the interrogation in direct response to a question which imputed to him knowledge that the truck was stolen and he was driving it anyway. In other words, he failed to answer a direct charge of guilt. Second, his request for an attorney would be perceived by the jury as something only a guilty person would do. The testimony was inadmissible for both reasons, and likewise, its erroneous admission was doubly damning to Mr. Frazier.

While I conclude that Detective Gargotto's testimony regarding Mr. Frazier's termination of the interrogation and his request for an attorney was both inadmissable and prejudicial, I nevertheless concur in the majority's affirmance of the judgment. Mr. Frazier's attorney did not object to the testimony, seek a mistrial, or ask the court to instruct the jury to disregard the testimony. Thus, the issue comes to us on a request for plain error review pursuant to Rule 30.20. As such, the burden was on Mr. Frazier to establish manifest injustice or a miscarriage of justice, not mere prejudice. *State v. Cline*, 808 S.W.2d 822, 824 (Mo. banc 1991). In *State v. Nolan*, 872 S.W.2d 99 (Mo. banc 1994), our Supreme Court stated:

"Manifest injustice or miscarriage of justice" is not an easy phrase to define. "Indeed the cases give the distinct impression that 'plain error' is a concept appellate courts find impossible to define, save they know it when they see it." 3A Charles Alan Wright, *Federal Practice and Procedure*, § 856 (1982). "[W]hether an appellate court should take notice of an error not raised below must be made on the facts of the particular case, and there are no 'hard and fast classifications in either the application of the principle or the use of a descriptive title.'" *Id.; accord Cline*, 808 S.W.2d at 824 ("The determination whether plain error exists must be based on a consideration of the facts and circumstances of each case.").

*Id.* at 103.

"If the evidence presented in a criminal case is not sufficient to sustain a conviction, plain error affecting defendant's substantial rights is involved resulting in manifest injustice." *State v. Fosdick*, 776 S.W.2d 54, 56 (Mo.App. S.D.1989). While I do not perceive this case as one in which the error was

385

harmless because of overwhelming evidence supporting the conviction, *see State v. Martin,* 797 S.W.2d 758, 765 (Mo.App. E.D.1990), I conclude that there was sufficient evidence to support the conviction without consideration of Detective Gargotto's inadmissible references to Mr. Frazier's request for an attorney. As a result, it becomes a question of the degree of prejudice which occurred because of the inadmissible evidence. From my review of the facts and circumstances of this particular case, I cannot say that I have a firm conviction that a "manifest injustice or miscarriage of justice has resulted." *Rule 30.20.*

For this reason, I concur in the result reached by the majority.