

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD83787 |
| | ) | |
| v. | ) | OPINION FILED: June 29, 2021 |
| | ) | |
| ROBERT F. SEATON, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Platte County, Missouri**
The Honorable James W. Van Amburg, Judge

Before Division Four: Cynthia L. Martin, Chief Judge, Presiding, Lisa White Hardwick, Judge and Thomas N. Chapman, Judge

Robert F. Seaton ("Seaton") appeals from a judgment denying his Rule 29.15[1] amended motion for postconviction relief following an evidentiary hearing. Seaton contends that the motion court clearly erred in denying his amended motion because trial counsel was ineffective by failing to object to admission of a portion of Seaton's video interview where Seaton invoked his right to remain silent, resulting in prejudice. Finding no error, we affirm.

---

[1]All Rule references are to *Missouri Court Rules, Volume I -- State, 2021*, unless otherwise indicated.

## Factual Background and Procedural History

Seaton was convicted after a jury trial of one count of statutory rape in the first degree, two counts of statutory sodomy in the first degree, and one count of child molestation in the first degree. His conviction was affirmed in a *per curiam* order. *State v. Seaton*, 495 S.W.3d 832 (Mo. App. W.D. 2016). On direct appeal, Seaton claimed that the trial court plainly erred in failing to grant a mistrial after the State committed a *Doyle*[2] violation by playing a portion of the video of Seaton's interview with a police detective where Seaton invoked his right to remain silent after first having waived that right. In an unpublished memorandum opinion explaining the reasons for affirming Seaton's conviction,[3] we found no plain error because the portion of the video about which Seaton complained:

> [did] not show that [Seaton] failed to answer a direct charge of guilt or that he refused to answer a question requiring an admission or denial of guilt. Instead, this testimony shows [Seaton's] agitation as to conversation about the victim's mother. Because the conversation did not even address the victim of the alleged criminal acts, the video does not necessarily create an inference of [Seaton's] guilt.

Seaton timely filed a *pro se* Rule 29.15 motion for postconviction relief. Appointed counsel timely filed an amended motion ("Motion"). The Motion alleged that trial counsel rendered ineffective assistance by failing to object to the State's admission of the portion of Seaton's video interview where Seaton invoked his right to remain silent,

---

[2]*Doyle v. Ohio*, 426 U.S. 610 (1976).

[3]An unpublished memorandum opinion is neither binding nor of precedential value in unrelated cases. *Craft v. Philip Morris Cos.*, 190 S.W.3d 368, 376 (Mo. App. E.D. 2005). However, an unpublished opinion is controlling to dispose of, and thus binds the parties with respect to, the case decided. *Theroff v. Dollar Tree Stores, Inc.*, 591 S.W.3d 432, 438 n.6 (Mo. banc 2020) ("[A]n unpublished memorandum opinion is for the parties."); *see, e.g., State v. Johnson*, 617 S.W.3d 439, 443-44 (Mo. banc 2021) (holding that judgment in criminal case that was appealed and affirmed "in an unpublished memorandum" was final and binding on a criminal defendant, and was not subject to review pursuant to a motion for new trial filed decades later).

creating the inference that Seaton was guilty of the crimes for which he was on trial. The Motion alleged that Seaton was prejudiced by trial counsel's ineffective assistance because, had counsel objected, the objection would have been sustained, and it is reasonably likely that the result of Seaton's trial would have been different.

At the evidentiary hearing on the Motion, Seaton admitted a DVD of the video interview, and a transcript from the underlying criminal case in which the video interview had been transcribed. Seaton did not testify, but called trial counsel to testify as his only witness. Trial counsel testified as follows:

> Postconviction Counsel: . . . [H]ow would you describe the case against [Seaton]? . . . .
>
> Trial Counsel: It was going to be what I would call a "he-said, she-said" situation. The two young girls but no physical evidence and just their testimony against [Seaton's] testimony.
>
> Postconviction Counsel: And so how strong did you feel the evidence was against [Seaton]?
>
> Trial Counsel: I didn't believe it was that strong.
>
> Postconviction Counsel: And what was your defense in the case?
>
> Trial Counsel: Basically, that he didn't do it. This was a situation where the younger of the two sisters made this story up for a particular reason that we brought out in trial.
>
> . . . .
>
> Postconviction Counsel: And [Seaton] testified in his own defense; correct?
>
> Trial Counsel: Yes, he did.

Postconviction Counsel: How important was [Seaton's] credibility to your defense in the case?

Trial Counsel: I thought it was crucial.

Postconviction Counsel: And sort of just as a general matter, as a criminal defense attorney, do you have concerns just generally about a jury learning that your client refused to speak with police?

Trial Counsel: Yes.

Postconviction Counsel: And what are your concerns there?

Trial Counsel: That they -- That he would have something to hide.

Postconviction Counsel: And now, as part of your preparation for trial, did you review [Seaton's] interrogation?

Trial Counsel: Yes, I did.

Postconviction Counsel: And did you anticipate the State was going to play that at trial?

Trial Counsel: Yes, I did.

. . . .

Postconviction Counsel: And in watching the interrogation, do you recall [Seaton] invoking the right to remain silent and to an attorney that ceased the interrogation?

Trial Counsel: Yes.

. . . .

Postconviction Counsel: Now, do you recall ever considering objecting to [Seaton's] invocation of, you know, his right to remain silent and right to an attorney, to that being presented to the jury?

Trial Counsel: I don't recall.

4

Postconviction Counsel: And so do you recall having any sort of strategic reason for not objecting to that?

Trial Counsel: Since I don't recall whether or not I wanted to object, no; but I felt like there were times--with credibility being an issue, being able to show the jury that [Seaton] was completely cooperative with the police, and that only at the time that he became frustrated with their lack of indicating to him why he was there, did he ask for an attorney.

Postconviction Counsel: And, I mean, would you consider that--as a criminal defense attorney--would you consider that a big issue coming in that your client invoked [sic] right to an attorney, right to remain silent, in an interrogation?

Trial Counsel: I think it would depend on the totality of the interrogation.

On cross-examination, trial counsel testified as follows:

State's Counsel: . . . [Y]ou had watched the video prior to the day of trial; had you not?

Trial Counsel: Yes, I had.

State's Counsel: And were you concerned with the content of the video at all?

Trial Counsel: No. I believe that the video showed my client being cooperative. My client didn't have anything--in the video, it showed that he had nothing to hide. He was explaining to the police what he thought he was there for, which was a car accident that had occurred.

State's Counsel: And is it fair to say that you also wanted the jury to see the video, given your opinion of what that video did for him?

Trial Counsel: Absolutely.

5

The motion court entered its findings of fact and conclusions of law and judgment on April 14, 2020 ("Judgment"). The motion court found that trial counsel was familiar with the content of the videotaped interview, and did not object to the jury hearing the interview "because he did not want to draw undue attention to the point and because he felt that [Seaton's] cooperation, attitude and demeanor as portrayed in the video might actually be beneficial with the jury." The motion court found that "trial counsel had a clear and reasonable trial strategy in not objecting to the video presented by the State." The motion court found that "[t]rial counsel's decision was informed with respect to the content of the video and based in part on his evaluation of how that video might be received by the jury." The motion court thus found that "trial counsel's performance at trial was reasonable trial strategy and professional, his decision made in the careful exercise of reasonable professional judgment."

The motion court also found that "the evidence against [Seaton] was substantial, and [Seaton] makes no claim to the contrary, but merely speculates as to the possibility that a single objection at that point in the trial might have resulted in an entirely different verdict." The motion court thus concluded that Seaton "failed to demonstrate prejudice caused by counsel's alleged errors and has failed to establish that there was a reasonable probability that the outcome of the trial would have been different, but for counsel's alleged error."

The motion court denied Seaton's Motion. Seaton filed this timely appeal.

**Standard of Review**

6

Our review of the denial of a Rule 29.15 motion is limited to determining whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k). "A judgment is clearly erroneous when, in light of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Davis v. State*, 486 S.W.3d 898, 905 (Mo. banc 2016) (quoting *Swallow v. State*, 398 S.W.3d 1, 3 (Mo. banc 2013)). "The motion court's findings are presumed correct." *Id.* (citing *Johnson v. State*, 406 S.W.3d 892, 898 (Mo. banc 2013)).

**Analysis**

In a single point on appeal, Seaton argues that the motion court committed clear error by denying the Motion because trial counsel was ineffective by failing to object to the portion of Seaton's video interview where he invoked his rights "in that strategic decisions must be reasonable," and "prejudice results in a close case where the improper evidence undercuts the defense."

"To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must show by a preponderance of the evidence that his or her trial counsel failed to meet the *Strickland* test in order to prove his or her claims." *Davis*, 486 S.W.3d at 905-06 (citing *Strickland v. Washington,* 466 U.S. 668 (1984)). "Under *Strickland,* Movant must demonstrate that: (1) his trial counsel failed to exercise the level of skill and diligence that a reasonably competent trial counsel would in a similar situation, and (2) he was prejudiced by that failure." *Id.* at 906 (citing *Strickland*, 466 U.S. at 687).

"Movant must overcome the strong presumption that trial counsel's conduct was reasonable and effective." *Id.* (citing *Johnson*, 406 S.W.3d at 899). "To overcome this

presumption, a movant must identify 'specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance.'" *Id.* (quoting *Zink v. State*, 278 S.W.3d 170, 176 (Mo. banc 2009)).

"To establish relief under *Strickland,* a movant must prove prejudice." *Id.* (quoting *Johnson*, 406 S.W.3d at 899). "Prejudice occurs when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Deck v. State*, 68 S.W.3d 418, 429 (Mo. banc 2002)).

This court need not "address both [*Strickland*] prongs if the movant has failed to make a sufficient showing on one." *Taylor v. State*, 382 S.W.3d 78, 81 (Mo. banc 2012) (citing *Strickland*, 466 U.S. at 697). "If the ineffectiveness claim can be disposed of because of lack of sufficient prejudice, that course should be followed." *Id.* (citing *Strickland*, 466 U.S. at 697).

Seaton's point on appeal addresses both *Strickland* prongs. However, in addressing prejudice, Seaton alleges only that "prejudice results [from deficient performance] in a close case." The point presumes this was a "close case," and leaves unchallenged the motion court's contrary findings that "the evidence against [Seaton] was substantial, and [Seaton] makes no claim to the contrary," and that Seaton thus did not establish prejudice as he "merely speculate[d] . . . that a single objection . . . in the trial might have resulted in an entirely different verdict." On that basis alone, the Judgment must be affirmed. *KDW Staffing, LLC v. Grove Constr., LLC*, 584 S.W.3d 833, 837-38 (Mo. App. W.D. 2019) (holding that the failure to challenge an articulated ground for the

8

trial court's ruling is fatal to appeal); *see also Taylor*, 382 S.W.3d at 81 ("If the ineffectiveness claim can be disposed of because of lack of sufficient prejudice, that course should be followed.").

Even if we overlook this fatal deficiency, we would not be persuaded by Seaton's argument addressing prejudice. Seaton acknowledges the motion court's finding that Seaton failed to establish *Strickland* prejudice--that is "a reasonable probability that, but for counsel's unprofessional errors, the result on the proceeding would have been different." *Baumruk v. State*, 364 S.W.3d 518, 526 (Mo. banc 2012) (quoting *Edwards v. State*, 200 S.W.3d 500, 518 (Mo. banc 2006)). However, Seaton argues, without citation to authority, that to determine *Strickland* prejudice when a *Doyle* violation is raised in a postconviction motion, we should apply the prejudice analysis applicable to *Doyle* violations raised on direct appeal.

This argument is not preserved for our review. "Mere conclusions and the failure to develop an argument without support from legal authority preserve nothing for review." *Wallace v. Frazier*, 546 S.W.3d 624, 628 (Mo. App. W.D. 2018) (*Nicol v. Nicol*, 491 S.W.3d 266, 271 (Mo. App. W.D. 2016)). In addition, the argument suggests that the motion court employed the wrong legal standard to determine whether Seaton established prejudice, a claim of error that is not expressed or fairly contemplated by Seaton's point on appeal. *KDW Staffing, LLC*, 584 S.W.3d at 837 n.4 (Mo. App. W.D. 2019) (holding that issues raised in the argument portion of a brief that exceed the scope of the point relied on are not preserved for appellate review pursuant to Rule 84.04(d)(1)).

9

Even if we reached the merits of Seaton's prejudice contentions developed in the argument portion of his brief, we would find them to be without merit. It is true, as Seaton notes, that the Missouri Supreme Court has identified four factors that are relevant to determining the prejudicial effect of a *Doyle* violation on direct appeal, namely: "(1) whether the government made repeated *Doyle* violations, (2) whether any curative effort was made by the trial court, (3) whether the defendant's exculpatory evidence is transparently frivolous, and (4) whether the other evidence of the defendant's guilt is otherwise overwhelming." *State v. Dexter*, 954 S.W.2d 332, 340 (Mo. banc 1997) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 639 (1993)).[4] But the essential predicate to considering the prejudicial effect of a *Doyle* violation is to first determine that a *Doyle* violation occurred. *Id.* (observing that "[o]nce a *Doyle* violation has been found," the identified factors should be considered in connection with the prejudice analysis).

Seaton concedes that on direct appeal, his plain error claim that the State committed a *Doyle* violation by playing Seaton's video interview was rejected because this Court found Seaton suffered no manifest injustice or miscarriage of justice sufficient to warrant a finding of prejudicial error. [Appellant's Brief, p. 24, n. 1] Seaton attempts to distance himself from this holding by citing to *Deck v. State*, 68 S.W.3d 418, 426 (Mo. banc 2002), which held that *Strickland*'s prejudice standard requiring a reasonable probability that but for trial counsel's errors, the result of a proceeding would have been

---

[4]These factors inform the prejudice analysis where the *Doyle* violation is preserved as a claim of error on direct appeal, in which case the burden shifts to the State to prove that a federal constitutional error was harmless beyond a reasonable doubt. *Dexter*, 954 S.W.2d at 340 n.1 (citing *Chapman v. California*, 386 U.S. 18 (1967). These factors also inform the prejudice analysis where the *Doyle* violation is not preserved on direct appeal, and is subject to plain error review, requiring the defendant to establish a plain error affecting substantial rights and resulting in manifest injustice. *Id.*

different, is a lower standard than plain error prejudice on direct appeal, which requires that error be outcome determinative. But Seaton's attempt to distance himself from the result reached in his direct appeal disregards that we did not find that Seaton failed to establish manifest injustice notwithstanding a *Doyle* violation, but instead found that Seaton failed to establish that the State's playing of the video interview constituted a *Doyle* violation.

Seaton is bound by this determination.[5] And even were he not, we would reach the same conclusion here.

> Once the defendant revokes the waiver of his right to remain silent, the state can show the circumstances under which an interrogation was terminated. Nonetheless, any evidence describing the conclusion of an interrogation must be carefully scrutinized. Evidence in regard to the conclusion of an interrogation which reveals that the defendant was failing to answer a direct charge of guilt is improper. Likewise, evidence which reflects that the defendant "clammed up" under circumstances calling imperatively for an admission or denial should not be admitted. However, to the extent that no inference of guilt can reasonably be drawn from evidence describing the conclusion of an interrogation, it is admissible.

*State v. Ellmaker*, 611 S.W.3d 320, 332 (Mo. App. W.D. 2020) (quoting *State v. Frazier*, 927 S.W.2d 378, 379-80 (Mo. App. W.D. 1996)); *see also State v. Ervin*, 398 S.W.3d. 95, 100-01 (Mo. App. S.D. 2013) (holding explanation of circumstances for defendant's invocation of right to remain silent after first waiving that right did not violate *Doyle* and was admissible where the evidence did not create an impermissible inference of guilt). This principle is consistent with the fact that a *Doyle* violation only occurs when a

---

[5]*See supra* note 3.

11

defendant's post-*Miranda* silence is "used to impeach the defendant at trial." *State v. Rice*, 573 S.W.3d 55, 72 (Mo. banc 2019) (citing *Doyle*, 426 U.S. at 618).

A review of the transcribed version of Seaton's video interview confirms that Seaton was *Mirandized* at the beginning of the interview; that Seaton was asked if he wished to speak with the detective, to which Seaton responded "[i]n regards to what?"; that the detective responded that he was "not going to get into it just yet" unless Seaton was wanting to waive his rights; that Seaton agreed to be interviewed though he repeatedly asked why he was being interviewed; that Seaton had called the police out of concern his son-in-law was drunk with one of Seaton's young grandchildren in a vehicle; that when police arrived to investigate this complaint, Seaton was told that there was a "hold" on him, though the police did not know why, and was thus taken to jail to await an interview; that when asked if anything had gone on in the last six months that the police might want to talk to him about, Seaton could think only of a traffic ticket for a vehicle accident that he had not yet paid; and that Seaton again indicated he had no idea why the detective wanted to talk to him.

At that point in the interview, the detective asked Seaton if there was a girl with Seaton in the car at the time of the accident. Seaton confirmed there was, and that the girl was someone he happened to know who had been around for a couple of months, though Seaton and the girl were not dating. The detective then asked Seaton about his last relationship, to which Seaton responded that he had previously dated a girl named "Renee." The detective, through a series of questions, was able to confirm that "Renee"

12

was "Laura Renee,"[6] though Seaton knew her as "Renee." Seaton confirmed that he and Laura (Renee) had been an item for four or five years. When asked about the relationship, Seaton described Renee as an alcoholic, while he does not drink, and that things didn't work out, though he had tried many times to help her. The detective continued to ask questions about Renee, including where she and Seaton had lived during their relationship. When the questions again turned to Renee being an alcoholic, Seaton lost patience, and told the detective "that's about as far as I'm going to go with it because I don't even know why I am sitting here answering these questions about Laura." The detective persisted and asked if Laura "[did] . . . anything other than drink," to which Seaton responded "that's between her and you." The detective next asked Seaton if he did "anything" with Laura, to which Seaton responded, "No, I don't do anything. Okay?"

Seaton then expressed frustration that he was "answering a bunch of questions about things" without knowing what the concern was, and that "until I find that out maybe I will call me an attorney." Seaton also told the detective he needed his medicine (having already described serious health issues during background questions), and that he was "sitting here, sweat pouring off of me, [and] sick." Seaton said he was "trying to be [as] polite and nice as I can," but that he was "starting to feel like I am being interrogated for something." Seaton said he was not trying to be rude, but that until he could figure out what was going on, he had the right to stop answering questions and intended to do so because he wanted to go home. Seaton said he was sick and tired and needed his medicine, and that he was done talking because "I'm sitting here and I have no idea why."

---

[6]"Laura Renee" is the mother of the victim of the crimes of which Seaton was convicted.

The State was permitted to explain the circumstances under which Seaton's interview ended, unless those circumstances revealed Seaton was "failing to answer a direct charge of guilt," or "clammed up under circumstances calling imperatively for an admission or denial" of guilt. *Ellmaker*, 611 S.W.3d at 332 (quoting *Frazier*, 927 S.W.2d at 380). Seaton does not argue that the circumstances under which his interview ended directly implicated his guilt. Nor can that conclusion be reasonably reached based on our review of the interview. Seaton has not sustained his burden to establish *Strickland* prejudice because the essential premise that the State's playing of the video interview was a *Doyle* violation is not borne out by the record.

Seaton's failure to establish *Strickland* prejudice ends our inquiry. However, it is worth noting that our conclusion that the video interview did not rise to the level of a *Doyle* violation aligns with trial counsel's strategic decision that Seaton stood to gain from the video interview being played given his polite and cooperative interaction with the detective. Trial counsel's strategic decision to bolster Seaton's credibility by permitting the jury to hear Seaton's interview, including the invocation of his right to remain silent after becoming frustrated with questions about an old girlfriend under circumstances that afforded Seaton no insight into why he was being interviewed, is subject to a "strong presumption that trial counsel's conduct was reasonable and effective." *Davis*, 486 S.W.3d at 906 (citing *Johnson,* 406 S.W.3d at 899). "To overcome this presumption, a movant must identify 'specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance.'" *Id.* (quoting *Zink,* 278 S.W.3d at 176). Seaton has not sustained this burden.

14

Though he expresses the opinion that it can never be strategically reasonable to permit a jury to hear a person invoke the right to remain silent, Seaton offered no evidentiary support for this opinion during his hearing, and trial counsel's testimony suggested to the contrary.

The motion court found not only that trial counsel had a reasonable trial strategy to not object to the portion of the video that involved Seaton's invocation of the right to remain silent, but also that trial counsel did not want to draw undue attention to the invocation of rights by objecting. Seaton complains this is an inherently inconsistent finding because it cannot be both that a permissible trial strategy supports allowing questionable evidence to be admitted because of a possible advantage to the defendant, and that the failure to object to the admission of evidence is justified by a desire to avoid drawing undue attention to the evidence. We disagree. Had trial counsel objected (by an *in limine* motion or at trial) to the portion of the video interview where Seaton invoked his rights, it is likely the objection would not have been sustained because the invocation of rights did not create an impermissible inference of guilt and was admissible to explain the circumstances that led to the Seaton's interview terminating. *Ellmaker*, 611 S.W.3d at 332-34; *Ervin*, 398 S.W.3d at 99-101; *Frazier*, 927 S.W.2d at 379-80. An objection would have drawn attention to evidence trial counsel did not want the State to emphasize under circumstances where the objection would not likely have been sustained. At the same time, trial counsel felt the better strategy was to emphasize that the totality of the video interview portrayed Seaton as cooperative because he only got frustrated and ended

15

the interview after twenty-five minutes of inquiry that afforded no insight into why Seaton was being questioned.

To this point, it is noteworthy that during the presentation of evidence, the State never emphasized or referred to Seaton's invocation of the right to remain silent after first waiving that right, even though Seaton testified in his own defense at trial and was subject to cross-examination.  In fact, the State never mentioned Seaton's decision to stop answering questions during his interview until rebuttal closing, when the State responded to trial counsel's closing argument that despite a twenty-five-minute interview with Seaton, the Detective never asked Seaton "the question" about the crimes for which he was tried.  The State responded to this "opened door" by arguing the Detective never asked "the question" because Seaton decided not to answer any more questions.[7]

Seaton has not alleged that trial counsel was ineffective by referring to Seaton's video interview during closing to argue that Seaton was not being evasive in an effort to bolster Seaton's credibility.  And Seaton has not alleged that trial counsel was ineffective by referring to the fact that Seaton was never asked about the crimes with which he was charged despite being interviewed for twenty-five minutes.  Trial counsel's use of the video interview during closing, a trial strategy about which Seaton has not complained, supports the motion court's conclusion that the decision to permit the jury to hear the video was "made in the careful exercise of reasonable professional judgment."

---

[7]Before making this argument during rebuttal closing, the State sought a ruling from the trial court that Seaton's closing argument successfully opened the door to commenting about Seaton's invocation of his right to remain silent.

16

The trial court's denial of Seaton's Motion was not clearly erroneous.  Point on appeal denied.

## Conclusion

The trial court's Judgment is affirmed.


_Cynthia L. Martin_____
Cynthia L. Martin, Judge

All concur