

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI,                )
                                  )
    Plaintiff-Respondent,     )
                                  )
v.                                )    No. SD38581
                                  )
DEPARIS D. TOWNSEND,              )    Filed: **September 9, 2025**
                                  )
    Defendant-Appellant.      )

APPEAL FROM THE CIRCUIT COURT OF MISSISSIPPI COUNTY

Honorable R. Zachary Horack, Judge

**AFFIRMED, REMANDED WITH INSTRUCTIONS**

Following a jury trial, Deparis Townsend ("Defendant") was convicted of first-degree murder, unlawful use of a weapon, resisting arrest, and armed criminal action. Defendant received a life sentence without the possibility of parole for the murder conviction, and all additional sentences were to be served concurrently with that sentence. Defendant raises three points on appeal: (1) that the trial court abused its discretion in admitting a screen-recording of a Facebook video depicting Defendant holding a weapon that matches the description of the one used to shoot Victim; (2) that the trial court erred in not *sua sponte* declaring a mistrial when Corporal M.F. testified that Defendant invoked his right to counsel when he attempted to speak with him; and (3) that the trial court should enter a *nunc pro tunc* order correcting its written

judgment (9999 years) to reflect the oral pronouncement of life without the possibility of parole. We affirm the trial court's judgment in part, finding no merit in Defendant's claims of error in Points I and II, but remand the case for entry of an Amended Judgment *nunc pro tunc* which corresponds with the trial court's oral pronouncement of sentence.

**Facts and Procedural History**

On July 28, 2022, Victim and witness S.S. were driving down the street when they noticed Defendant in the doorway of a house. Victim and Defendant had a brief confrontation and Victim asked Defendant if he was "going to get a banger," which S.S. clarified meant a gun. S.S. and Victim then drove off and were later stopped at a stop sign trying to get their phone's Bluetooth to work. S.S. was driving and Victim was in the passenger seat. While S.S. and Victim were talking with friends who pulled up beside them, Defendant drove up behind them in a white Pontiac. Victim and S.S.'s friends then drove off and S.S. could see a red dot in the car mirror and on her face. Defendant then pulled up beside Victim and S.S. and said "I got him," and S.S. recalls seeing the black firearm with the red dot. Defendant then drove around S.S.'s vehicle, and S.S. and Victim followed him in their vehicle. After both vehicles came to a stop, Victim exited S.S.'s vehicle and Defendant exited his vehicle with the firearm. After Victim asked Defendant why he has a "banger," Defendant walked to the back of S.S.'s vehicle, shot Victim several times and then drove away.

An off-duty police officer, J.M., was about 50-100 feet from the scene and came to Victim's aid after hearing the gunshots. He testified that Victim stated, repeatedly, "I've been shot" and was going in and out of consciousness. Officer J.M. testified that Victim said it was Defendant who shot him. Another officer, R.S., testified that Victim said Defendant was the one

who shot him. Victim died as a result of multiple gunshot wounds to his chest, abdomen, and pelvis.

Defendant fled, was apprehended after a pursuit and taken to the hospital. Corporal M.F. attempted to interview Defendant at the hospital. Corporal M.F. introduced himself and said he wanted to speak to Defendant about an incident that happened earlier that day. Defendant cursed at Corporal M.F. and stated he wanted his lawyer. Corporal M.F. left the room and made no further attempts to speak to Defendant.

Defendant was charged with: one count of the class A felony of murder in the first degree (§565.020);[1] one count of the class A felony of unlawful use of a weapon (§571.030.9); one count of the class E felony of resisting arrest (§575.150); and one count of the unclassified felony of armed criminal action (§571.015). A jury found Defendant guilty of all charges. The trial court sentenced Defendant as a prior and persistent offender to life without the possibility of parole for his first-degree murder conviction, with the remainder of his sentences to run concurrently. This appeal followed.

## Admission of Facebook Video Screen-Recording of Defendant

### *Standard of Review*

"The standard of review for the admission of evidence is abuse of discretion." ***State v. Wilson***, 602 S.W.3d 328, 332 (Mo. App. W.D. 2020) (quoting ***State v. Primm***, 347 S.W.3d 66,70 (Mo. banc 2011)). Trial courts have "broad leeway in choosing to admit evidence; therefore, an exercise of this discretion will not be disturbed unless it is clearly against the logic of the circumstances." ***Id.*** Error alone is insufficient for reversal unless the error was "so prejudicial that it deprived the defendant of a fair trial." ***Id***. (citing ***State v. Hein***, 553 S.W.3d

---

[1] Unless otherwise indicated, all statutory references are to RSMo 2016, as amended through May 20, 2024.

893, 896 (Mo. App. E.D. 2018)). Prejudice occurs only when there is a "reasonable probability that but for the court's error[,] the outcome of the trial would have been different." *Id.* (citing *State v. Harris*, 358 S.W.3d 172, 174 (Mo. App. E.D. 2011)). Defendant has the burden of establishing prejudice. *State v. Snow*, 437 S.W.3d 396, 402 (Mo. App. S.D. 2014).

*Analysis*

In Defendant's first point on appeal, he asserts the trial court abused its discretion in admitting a screen-recording of a Facebook video from Defendant's account because the State failed to establish its authenticity. Defendant, however, makes no argument that this alleged error was prejudicial. Defendant's brief does not undertake any analysis to demonstrate why this alleged error is outcome-determinative, especially in light of the overwhelming evidence in this case. In the absence of an argument for prejudice, this Court will not "act as an advocate by scouring the record for facts to support [d]efendant's contentions." *State v. Remster*, 567 S.W.3d 306, 311 (Mo. App. S.D. 2019) (quoting *State v. Vitabile*, 553 S.W.3d 429, 431 (Mo. App. S.D. 2018)). This absence alone is sufficient to deny Defendant's Point I. Even if Defendant had made an argument as to prejudice, which he did not, we would still deny Defendant relief as the evidence as to the authenticity of the Facebook video was sufficient.

"Whether a sufficient foundation supports admission of an exhibit into evidence 'is a decision within the broad discretion of the trial court.'" *State v. Burst*, 712 S.W.3d 429, 436 (Mo. App. E.D. 2025) (quoting *State v. Minner*, 256 S.W. 92, 97 (Mo. banc 2008)). "The party offering a videotape in evidence must show that it is an accurate and faithful representation of what it purports to show." *Id.* at 437. An example of properly laying a foundation for a video is through "testimony of any witness who is familiar with the subject matter of the tape and competent to testify from personal observation." *Id*.

4

The screen-recording of the Facebook video at issue was introduced into evidence during the testimony of Officer R.S., who had received the screen-recording of the Facebook video via text message. Officer R.S. identified the individual in the Facebook profile's photo as Defendant and the Facebook page as having Defendant's name. Further, Officer R.S. was able to identify Defendant in the video. The video is a "few-second clip" that depicts Defendant holding a weapon that matches the description of the weapon used in the incident at issue in this case, including the red laser that witness S.S. described was pointed at her and Victim before the incident.

The trial court did not abuse its discretion in admitting the Facebook video. Officer R.S. had reviewed the video and could identify Defendant in the video along with Defendant's identifiers on the Facebook page where it was found. This was a sufficient foundation for admission. *See* ***State v. McNear***, 343 S.W.3d 703, 705 (Mo. App. S.D. 2011). Defendant's objections to the "authenticity" of the video were directed to the weight of the evidence as opposed to its admissibility, and such objections were presented in great detail to the jury during Defense counsel's thorough cross-examination.[2] "Less than absolute identifications of real evidence speak to the weight of the evidence, not admissibility." ***Powell v. State***, 717 S.W.3d 290, 301 (Mo. App. W.D. 2025) (quoting ***State v. Miller***, 208 S.W.3d 284, 288 (Mo. App. W.D. 2006)) (Holding that counsel was not ineffective for failing to object to the admission of a photograph of a gun where the State presented sufficient evidence from which the jury could conclude the gun was connected to Defendant and the crime). As the admission of the video was

---

[2] During his testimony, Officer R.S. admitted that anyone can make a Facebook profile using any name, he is not a computer expert, he did not trace the IP address of the video or screen-recording, and he did not know if the weapon depicted in the screen-recording is the exact weapon from this incident. The jury was entitled to consider this information, along with all the other evidence presented at trial, during their deliberations.

not error and the Defendant has not argued that any prejudice resulted from such admission, Point I is denied.

## Admission of Defendant's Statement Invoking Right to Counsel

### *Standard of Review*

Defendant requests plain error review of Point II under Rule 30.20.[3] "Rule 30.20 is the exclusive means by which an appellant can seek review of any unpreserved claim of error, and said claim – no matter if it is statutory, constitutional, structural, or of some other origin – is evaluated by this Court's plain error framework without exception." ***State v. Bodine***, 702 S.W.3d 514, 516 (Mo. App. S.D. 2024) (quoting ***State v. Brandolese***, 601 S.W.3d 519, 530 (Mo. banc 2020)). "Plain error review is discretionary under Rule 30.20." ***Id.*** at 516 (citing ***State v. Perkins***, 640 S.W.3d 498, 501 (Mo. App. S.D. 2022)). Plain error review involves a two-step process:

> The first step requires a determination of whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear. If plain error is found, the court then must proceed to the second step and determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.

***Id.*** (quoting ***State v. Minor***, 648 S.W.3d 721, 731 (Mo. banc 2022)). "[T]he appellant must show the error was outcome determinative." ***Id.*** at 517 (quoting ***State v. Wood***, 580 S.W.3d 566, 579 (Mo. banc 2019)) (internal quotation omitted).

### *Analysis*

In Point II, Defendant argues that the trial court erred in not *sua sponte* declaring a mistrial when Corporal M.F. testified, without objection, that the Defendant stated "**** you I want my lawyer" when the officer attempted to speak to Defendant in the hospital. Defendant

---

[3] Unless otherwise noted, all rule references are to Missouri Court Rules (2024).

further argues that there was "no reason for the State to present that testimony except that the circumstances were such that an inference of guilt could be drawn from [Defendant's] statement."

"Mistrial is a drastic remedy and should be employed only in the most extraordinary circumstances." *State v. Boyd*, 659 S.W.3d 914, 926 (Mo. banc 2023) (quoting *State v. McFadden*, 369 S.W.3d 727, 740 (Mo. banc 2012)).  The decision to grant a mistrial is "left to the discretion of the trial court because the trial court is in the best position to observe the impact of the problematic incident." *Id*.  (quoting *State v. Roberts*, 948 S.W.2d 577, 605 (Mo. banc 1997) (internal quotation omitted).  Furthermore, "a court should declare a mistrial sua sponte 'only in exceptional circumstances.'" *Id*. (quoting *State v. Clay*, 975 S.W.2d 121, 134 (Mo. banc 1998)).

"[T]he State is free to show the circumstances under which [an] interrogation was terminated as long as no inference of guilt can be reasonably drawn from the evidence." *State v. Mason*, 420 S.W.3d 632, 639 (Mo. App. S.D. 2013) (citing *State v. Ervin*, 398 S.W.3d 95, 101 (Mo. App. S.D. 2013); citing *State v. Frazier*, 927 S.W.2d 378, 381-82 (Mo. App. W.D. 1996)).  An inference of guilt can be reasonably drawn if a defendant's assertion of their right to counsel is in the face of a direct charge of guilt.  *Id.*

In this case, Corporal M.F. testified that he attempted to interview Defendant while he was in the hospital.  Corporal M.F. stated he introduced himself to Defendant and wanted "to talk to [Defendant] about an incident that happened earlier today."  After this introduction, Defendant began cursing at Corporal M.F. and said "I want my lawyer."  Corporal M.F. then exited the room because Defendant invoked his right to counsel.

Defendant has not made an adequate showing that either a manifest injustice or a miscarriage of justice occurred. There is no inference of guilt that can be drawn from the Defendant's response to Corporal M.F. asking only to speak about "an incident that happened earlier today," as Defendant's statement was not made in the face of a direct charge of guilt. *See Mason*, 420 S.W.3d at 639. Even if admission of Defendant's statement had been in error, which we hold it was not, it certainly would not have risen to the level of plain error. *See State v. Frazier*, 927 S.W.2d 378, 381-82 (Mo. App. W.D. 1996).

In *Frazier*, the detective who interrogated the defendant repeatedly emphasized that the defendant requested an attorney during his testimony. *Id*. at 382. As there was no objection raised at trial, the appellate court was limited to plain error review. *Id*. The court held that, under plain error review and in light of the whole record, the defendant's guilt was clearly supported by the evidence and the defendant did not show that manifest injustice or a miscarriage of justice occurred as a result of the detective's repeated statements that the defendant invoked his right to counsel. *Id*.

Like in *Frazier*, this is a case of plain error review except the single reference to Defendant's statement in this case is far less egregious than the conduct found not to constitute plain error in *Frazier.* In reviewing the entire record, including the testimony of eyewitnesses and the other substantial evidence of Defendant's guilt, Defendant has failed to establish that the brief reference to his invocation of the right to counsel was outcome-determinative, resulting in a manifest injustice or a miscarriage of justice. Therefore, this Court denies Defendant's request for plain error review. Defendant's Point II is denied.

8

**Request for *Nunc Pro Tunc* Order Amending Defendant's Sentence in Judgment**

*Standard of Review*

This Court may invoke the power to enter a *nunc pro tunc* order in criminal cases to correct clerical errors "if the written judgment does not reflect what was actually done." ***State v. Nieto***, 689 S.W.3d 239, 246 (Mo. App. S.D. 2024) (citing ***State v. Christenson***, 642 S.W.3d 793, 801 (Mo. App. S.D. 2022)). A *nunc pro tunc* order can be used to correct a judgment if the record shows "a basis to support an amendment to the judgment and the trial court's intentions regarding the defendant's sentence are clear from the record[.]" ***State v. Smith***, 579 S.W.3d 284, 290 (Mo. App. S.D. 2019) (citing ***State v. Moore***, 518 S.W.3d 877, 889 (Mo. App. E.D. 2017)).

*Analysis*

Defendant argues the written Judgment stating his sentence for Count I as "9999 years" materially differs from the trial court's oral sentence of "life without the possibility of parole" and should be corrected under Rule 29.12(c). We agree.

Rule 29.12(c) provides: "[c]lerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time after such notice, if any, as the court orders." "The failure to accurately memorialize the decision of the trial court as it was announced in open court is a clerical mistake." ***State v. Denham***, 686 S.W.3d 357, 369 (Mo. App. W.D. 2024) (citing ***State v. Davie***, 638 S.W.3d 514, 524 (Mo. App. W.D. 2021)). If the written judgment and oral pronouncement materially differ, the oral pronouncement controls. ***State v. Hausmann***, 681 S.W.3d 637, 640 (Mo. App. S.D. 2023) (citing ***State v. Clark***, 494 S.W.3d 8, 14 (Mo. App. E.D. 2016)).

The authorized punishment for first-degree murder is either death or imprisonment for life without eligibility of probation or parole. Section 565.020.2. In this case, the written

9

judgment stating Defendant's sentence is "9999 years" materially differs from the trial court's oral pronouncement of "life without the possibility of parole" at sentencing. *See **State v. Hausmann***, 681 S.W.3d 637, 640 (Mo. App. S.D. 2023). This discrepancy in the written judgment, created after the sentencing hearing, is a clerical error which is "the prototypical circumstance" calling for a *nunc pro tunc* order. ***State v. Fielder***, 706 S.W.3d 303, 309 (Mo. App. W.D. 2025) (quoting ***State v. Bjorgo***, 571 S.W.3d 651, 661 (Mo. App. W.D. 2019)).

## Conclusion

We affirm the trial court's judgment as to Points I and II, and remand this matter to the trial court with instructions to amend the written judgment *nunc pro tunc* to conform to the oral pronouncement of sentence as "life without the possibility of parole" on Count I.


MATTHEW P. HAMNER, J. – OPINION AUTHOR

JENNIFER R. GROWCOCK, C.J. – CONCURS

BECKY J. WEST, J. – CONCURS